UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE APPLICATION OF
TATIANA AKHMEDOVA,

    Applicant,

                                                       CASE No.

REQUEST FOR DISCOVERY PURSUANT
TO 28 U.S.C. § 1782
_____/

## *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicant, Tatiana Akhmedova ("Applicant"), by and through her undersigned counsel, applies for an Order pursuant to 28 U.S.C. § 1782 to obtain discovery in the form of a subpoena to be served on Humaid Abdulla Mohammed al Masaood al Muhairbi ("Al Masaood"), an individual domiciled in Tampa, Florida, for a deposition and for the production of relevant documents in his possession, custody, and/or control for use in two pending foreign adjudicative proceedings, all for the reasons set forth in this Application; the Declaration of Alessandro Tricoli, dated August 10, 2020 (the "Tricoli Declaration"); as well as the exhibits thereto; and the Memorandum of Law submitted contemporaneously with this Application.

**JURISDICTION AND VENUE**

Jurisdiction is proper pursuant to Title 28 United States Code Section 1782 as this Application is for discovery involving a deposition and the production of documents located within the Middle District of Florida, discovery relevant and important to assist Applicant in her pending foreign court proceedings.

Venue in the Middle District of Florida is appropriate pursuant to Title 28 United States Code Section 1782 because the discovery is being sought from a third party, Al Masaood, who

resides within this Judicial District, along with the documents being presently in this jurisdiction. Specifically, Al Masaood has a residence located at 51 Martinique Avenue, Tampa, Florida 33606.

## THE FOREIGN PROCEEDINGS

Under 28 U.S.C. § 1782, an applicant may be granted discovery in the United States in aid of a pending foreign proceeding if the applicant is an interested party to the foreign proceeding and if the information sought is located within the District.  Applicant seeks discovery with respect to documents located in the United States and in this District and the taking of a deposition of a resident of this District for use in the following foreign proceedings:

(i) the pending litigation in Dubai wherein Farkhad Akhmedov (Applicant's ex-husband) is seeking to determine his and Applicant's divorce anew according to Sharia law, the basis of which is Mr. Akhmedov's purported personal status as an UAE resident;

(ii) the pending litigation in Dubai between Applicant and Farkhad Akhmedov and Straight Establishment (defined below), to recognize and enforce an English money judgment, which is currently under consideration of the Dubai Cassation (Appeal) Court.

## RELEVANT FACTS

The facts giving rise to this Application are set forth in detail in the Tricoli Declaration, as well as the exhibits thereto.  According to the declaration, the dispute and pending foreign litigations can be briefly summarized as follows:

**I.   The English Money Judgments and the Debtors' Fraudulent Transfer of Assets**

Applicant has obtained two English money judgments rendered by the Family Division of the High Court of Justice in London (the "English Court") in favor of the Applicant.  One against

Farkhad Teimur Ogly Akhmedov ("Farkhad"), Cotor Investment, S.A. ("Cotor"), Qubo 1 Establishment ("Qubo 1"), Qubo 2 Establishment ("Qubo 2"), Straight Establishment ("Straight Establishment"), and Avenger Assets Corporation ("Avenger Assets"), jointly and severally, in the amount of GBP £125,569,492 plus interest and certain running adjustments (the "Initial Money Judgment"); and the second against Straight Establishment in the amount of $478,278,000 (the "Straight Money Judgment"). The English Judgments were awarded following an eight-day Financial Remedy Hearing conducted in the Family Division of the English High Court in connection with the divorce of Applicant Ms. Akhmedova and Farkhad Akhmedov.

Applicant issued a divorce petition in London on October 24, 2013. Ms. Akhmedova was granted a *decree nisi*, stating that the English Court saw no reason why the couple could not divorce, on December 2, 2015. The *decree nisi* was made absolute on December 15, 2016. Thereafter, an eight-day financial remedy hearing was heard in the Family Division of the English High Court in November and December 2016. The purpose of the Financial Remedy Hearing was to establish the value of the couple's assets and to decide how to divide that value in a final distribution.

However, on November 30, 2016 (the second day of the trial in England) a luxury yacht, the M/Y LUNA, beneficially owned by Farkhad via corporate shell and registered in the Marshall Islands with Certificate of Registry No. 5817-PY (the "Vessel"), was transferred from its corporate owner, Avenger Assets, to another entity, Stern Management Corporation at the instruction of Farkhad. One day later, on December 1, 2016, the Vessel was again transferred at the instruction of Farkhad from Stern Management Corporation to Qubo 2. Later, Qubo 2 was found by the English Court to be the alter ego of Farkhad. Y. CO. and its principals, owners and top managers were materially involved in facilitating the transfer of the Vesesl to Stern Management Corp., to

3

Qubo 2, and subsequently through Straight Establishment through the grant of Special Power of Attorney.

At the conclusion of the Financial Remedy Hearing on December 15, 2016, the English Court awarded Ms. Akhmedova a cash award of GBP £350,000,000 (approximately US $466.6 million) (the "Cash Award").  Farkhad was ordered by the English Court to pay the Cash Award by January 6, 2017.  On December 20, 2016 the English Court issued a freezing order (the "Freezing Order") preventing Farkhad and the other judgment debtors from dealing with his assets (whether in or outside England and Wales), and ordering him to make financial disclosure of his assets.

On December 20, 2016 the English Court also found that transfers of a 1) modern art collection and 2) the assets of Cotor,[1] to entities in Liechtenstein, including Qubo 1 and Qubo 2 "was simply the latest part of [Farkhad's] attempts to avoid his liabilities by purporting to transfer his assets to a new jurisdiction and thereby making enforcement more difficult."  The English Court set aside these transfers on the basis that Qubo 1 and Qubo 2 "are no more than ciphers and the alter ego of [Farkhad]" an"d made the Qubo entities liable for the judgment debt together with Farkhad.  Tricoli Ex. 2 ¶¶ 11(g)-(h), 12.

Farkhad has not satisfied any portion of the Cash Award, including the Initial Money Judgment, and is currently in contempt of Court for breaching the terms of the Freezing Order. He has instead continued to engage in a pattern of deception aimed at concealing his assets and frustrating Ms. Akhmedova in her efforts to enforce her rights as a UK judgment creditor.

On March 8, 2017, in disregard of the English Judgment (under which Qubo 2 was liable on the judgment debt together with Farkhad), and the English Freezing Order, Qubo 2 transferred

---

[1] In 2012, Farkhad sold his interest in ZAO Northgas, a Russian oil company, for US $1.375 billion.  Following the sale, Farkhad transferred the sale proceeds to Cotor.  Tricoli Ex. 1 ¶ 77.

the Vessel to Straight Establishment. On March 21, 2018, the English Court issued an order against Defendants Straight Establishment and Avenger Assets (the "March 21 Order"). The English Court found that Straight Establishment was an alter ego of Farkhad and served as his nominee. The English Court found that assets held and previously held in Straight Establishment's name, as well as assets held and previously held in Avenger Asset's name, beneficially belonged to Farkhad, including the Vessel which had been fraudulently transferred by Farkhad several times during the English proceedings.

Also on March 21, 2018, the English Court declared "with immediate effect that Applicant is the legal and beneficial owner of the Vessel," and ordered Farkhad and Straight Establishment to transfer title to Ms. Akhmedova within seven days. The English Court ordered that if the title transfer was not effected within seven days, Straight Establishment would be liable to Ms. Akhmedova for the liquidated cash sum of the Straight Money Judgment. The English Court also extended the Freezing Order to apply to Straight Establishment and Avenger Assets, and specifically applied to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel.

## II.     The Dubai Proceedings

### A.     The Dubai Judgment Enforcement Proceeding

Following the issuance of the English Judgments as well as the Freezing Order directed at Farkhad with respect to the Vessel, on February 7, 2018 Applicant filed an application in the Dubai International Financial Centre ("DIFC") Courts against Farkhad and Straight Establishment (the owning entity of the Vessel), for recognition of the English Judgment. At the time of the DIFC

5

application, the Vessel was in Port Rashid, Dubai, where it currently remains subject to a preliminary injunction issued out of the Republic of the Marshall Islands.[2]

While Straight Establishment acknowledged the proceedings contesting the jurisdiction of the DIFC courts, Farkhad did not appear before the DIFC courts and instead commenced separate proceedings before the Dubai courts leading, on May 6, 2018, to an application to the Dubai Joint Judicial Committee to decide on the conflicting jurisdiction created by virtue of the separate proceedings commenced by Farkhad.  On July 11, 2018, the Committee held that the case should be heard in the local Dubai courts notwithstanding that the proceedings before the DIFC court were by then at appeal stage.

The Dubai Court of First Instance issued a decision on November 12, 2018, in which it declined to recognize the English orders and judgments on the basis that the English Judgments did not appear to be final and conclusive based on the lack of a seal on the documents.  On November 22, 2018, Mrs. Akhmedova filed an appeal against this decision.

On March 27, 2019, the Court of Appeal (Commercial Appeal No. 2646/2018) delivered a judgment, reversing the CFI judgment on the basis that sufficient proof that the English judgments are final and conclusive final has been given, and sending the file back to the execution judge at the Court of First Instance as the competent judge to hear the case (due to a recent change in the procedural rules).  Accordingly, on April 29, 2019, the chief justice of the Dubai Court issued his first "original" order to append the execution stamp on the judgment issued by the High Court of Justice in London in the case.  On July 17, 2019 a further interim order was issued directing the sealing of the English Judgment with the execution stamp.

---

[2] James Power, Esq., who is admitted in the Republic of the Marshall Islands, is counsel for applicant Tatiana Akhmedova in pending actions before the High Court of the Republic of the Marshall Islands.

Based on the above, Ms. Akhmedova registered the Execution No. 4128/2019 Commercial Execution on August 8, 2019 by a statement whereby she sought from the execution judge to "enforce the Judgment made in the Case No. FD13D05340 made by the High Court in London with the execution stamp, to deliver the possession of and transfer the title in the yacht Luna to Ms. Akhmedova for the satisfaction of $487,278,000 (or AED 1,790,746,650), and to order Farkhad and Straight Establishment to pay the courts costs and attorneys' fees." The enforcement application remained before the execution judge at Dubai Courts and no decision was made. On October 31, 2019, Ms. Akhmedova applied to effect the executory attachment of the vessel Luna. On November 11, 2019, the execution judge granted her application to effect the executory attachment of the vessel Luna.

On July 30, 2019, Straight Establishment and Farkhad each filed appeals seeking to reverse the two orders dated April 29, 2019 and July 17, 2019 whereby it was ordered to seal the English Judgment made by the High Court in London with the execution stamp. The Dubai Court of Appeal decided to join the two appeals in order for one judgment to be entered. On February 5, 2020, the Dubai Court of Appeal ruled to "grant the two Appeals as to their form. Second: As to the merits of the two Appeals, to overturn the order under appeal which was issued in the matter of the Order-on-Petition No. 14/2019 Execution Stamp, and to deliver a new judgment that is to dismiss the application made to seal the foreign judgment and the ancillary orders thereof – which were issued by the High Court of Justice in London under the number FD13D05340 – with execution stamp. The Court orders the First Respondent in the matter of the two Appeals to pay the costs of the two appeals and AED 2,000 of attorneys' fees."

The Court of Appeal rested its judgment which reversed enforcement and execution of the English Judgments on the reasoning that the sharing principle applicable in English Law (i.e., the

division of marital assets ordered by the English Court) violates the Sharia Law and as a result contrary to the public orders and morals of the Dubai courts. Ms. Akhmedova has appealed this ruling to the Dubai Court of Cassation. Her most recent filing was made on April 2, 2020. Both Farkhad and Straight Establishment provided submissions to the Dubai Court of Cassation in relation to Ms. Akhmedova's appeal, and following a brief oral hearing on July 20, 2020, a decision by the Dubai Court of Cassation is expected on August 13, 2020.

### B. The Dubai Personal Status Claim

On or about February 23, 2020 Farkhad filed a new action before the court of personal status in Dubai seeking a confirmation of divorce, in which he claimed that he and Ms. Akhmedova had entered into a Sharia marriage contract at the time of their marriage in 1993. Central to Farkhad's application to establish that the marriage was established under Sharia law and that a divorce and distribution of assets is proper under Sharia law is establishing his residence in Dubai.[3]

Certain documents obtained during discovery in the English Proceedings from Farkhad's son Temur, who is closely involved with Farkhad's evasion of the English Judgments, reveal a scheme to establish residency in Dubai. As set forth in the Tricoli Declaration, and attached as exhibits thereto, the correspondence reveals a scheme dating back to 2014 wherein Farkhad sought to fraudulently establish residence in the UAE as part of a scheme to hide assets from Applicant and to evade enforcement of Applicant's judgments against him.

It is clear from the correspondence obtained that Al Masaood was individually involved in obtaining the UAE residence visa for Farkhad which substantially aided and abetted Farkhad's

---

[3] Farkhad is looking to use Sharia law, which limits the rights of women in divorce cases, to frustrate Applicant's rights under the otherwise valid English divorce decree and subsequent financial remedy proceeding wherein the marital estate was apportioned by the English Court. Farkhad is looking to establish residency post English judgment in the UAE for the sole purpose of seeking to use Sharia law to deny Applicant the distribution of estate proceeds previously ordered by the English Court.

efforts to hide assets in the UAE during the English divorce proceedings. Further, this residence is being used to further Farkhad's recently-filed application to re-establish the couple's divorce in the Dubai courts under Sharia law.

Finally, information received through discovery requested in other actions reflects that Al Masaood received funds in late 2018 and into 2019 from an entity called Y.Co NY Inc., a company affiliated with the yacht managers of Farkhad's superyacht located in Dubai, the M/Y LUNA. It is believed these payments may be related to recent actions taken by Farkhad in connection with his UAE residency.

## **REQUEST FOR DISCOVERY ASSISTANCE**

Applicant respectfully requests that the Court provide discovery assistance with respect to the foreign proceedings in the Dubai. Applicant requests that Al Masaood, who is present in the Middle District of Florida, be directed to provide discovery, described below, for use in the pending foreign proceedings. As more specifically described in Applicant's Memorandum of Law in Support of an Application for Discovery Pursuant to 28 U.S.C. § 1782, assistance is appropriate here because: (i) the discovery subject "resides" at or is "found" in this District; (ii) Applicant is an "interested person" (as a party to each of the foreign proceedings); and (iii) the foreign proceedings are pending before a "foreign or international tribunal," and the information obtained will be for use in and in support of further adjudication in the foreign proceedings.

WHEREFORE, pursuant to 28 U.S.C. § 1782, Applicant requests that this Court enter an Order:

1) Authorizing Applicant to issue and serve subpoenas on Humaid Abdulla Mohammed al Masaood al Muhairbi for the production of the following documents:

9

a) All documents in the possession or control of Al Masaood concerning efforts made by himself personally or using Humasen Energy to obtain a United Arab Emirates (UAE) residency visa for Farkhad Akhmedov from 2014 to present, including but not limited to:

   i) any communications between Masaood, Humasen Energy or their representatives and Farkhad Akhmedov or his agents or representatives, or any third parties;

   ii) any communications between Al Masaood, Humasen Energy or their representatives and the UAE General Directorate of Residency and Foreigners Affairs or the Federal Authority for Identity and Citizenship regarding Farkhad Akhmedov;

b) All documents and communications related to "Project Maldives";

c) All documents in the possession or control of Al Masaood concerning funds received from Y.Co NY Inc., the yacht manager for Farkhad Akhmedov's yacht the M/Y LUNA, including but not limited to those received in 2018;

2) Authorizing Applicant to issue and serve subpoena on Al Masaood for the appearance at a deposition at a time mutually agreed;

3) Ordering Al Masaood to produce the documents requested within fourteen (14) days of service of the subpoena;

4) Ordering Al Masaood to preserve documents and evidence, electronic or otherwise, in his possession, custody or control that contain information potentially relevant to the subject matter of the Applicant's document request;

5) Retaining jurisdiction over the matter for the purpose of enforcement and assessing any supplemental request for discovery assistance that may be requested by Applicant.

****

In summary, based on the reasons set forth in this Application; the Declaration of Alessandro Tricoli dated August 10, 2020 as well as the exhibits thereto; and the Memorandum of Law; Applicant clearly meets the requirements of 28 U.S.C. § 1782, and this Application for the Order should be granted.

Dated:	August 11, 2020

                              HOLLAND & KNIGHT LLP

By:	*/s/ Jason Baruch*
      Jason Baruch (FBN 10280)
      100 North Tampa Street, Suite 4100
      Tampa, Florida 33602
      Telephone:  (813) 227-6607
      Facsimile:  (813) 229-0134
      Email:  jason.baruch@hklaw.com

      James H. Power
      Marie E. Larsen
      (*Pro Hac Vice* to be submitted)
      31 West 52nd Street
      New York, New York 10019
      Telephone:  (212) 513-3200
      Facsimile:  (212) 385-9010
      Email:  james.power@hklaw.com
             marie.larsen@hklaw.com

      *Trial Counsel for Tatiana Akhmedova*