**<u>EXHIBIT 4</u>**

**Before the Dubai Court of Cassation**


**Cassation Appeal No.      /2020 Civil Cassation Appeal**

**Appellant: Tatiana Mikhailova Akhmedova**

Address: Outside the State, Britain, London, Somerton House, St George's Hill, Weybridge, Surrey, KT13 0NR, to be notified for the purposes of this Cassation Appeal only at the address of its legal attorney: Fichte and Co.

Vs.

**1)  First Respondent: Straight Establishment**

Address: Outside the State, Lichtenstein, c/o Counselor Trust Registered, Zollstrasse 2, Vaduz, **9490, to be notified at the address of its legal attorney: Al Tamimi and Co.**

**2)  Second Respondent: Farkhad Teimur Ogly**

Address: Outside the State, Azerbaijan, Baku, 17 Mirza Shafi Street, Old City, AZ1 095 to be notified at the address of its legal attorney: Galadari and Co.


**Subject: Statement of Cassation Appeal together with an application to stay the contested judgment**

**Filed on 02 April 2020**

**Contested Judgment:** The Judgment issued by the Dubai Court of Appeal dated 05.02.2020 in the two appeals nos. 6/2019 and 10/2019 a civil order-on-a-petition whose operative part reads as follows: *(The Court ruled First: to grant the two Appeals as to their form. Second: As to the merits of the two Appeals, to overturn the order under appeal which was issued in the matter of the Order-on-Petition No. 14/2019 Execution Stamp, and to deliver a new judgment that is to dismiss the application made to seal the foreign judgment and the ancillary orders thereof – which were issued by the High Court of Justice in London under the number FD13D05340 – with execution stamp. The Court orders the First Respondent in the matter of the two Appeals to pay the costs of the two appeals and AED 2,000 of attorneys' fees.)*


**First: As to Form:** whereas Article 85.2 of the Civil Procedures Law stipulates that that the order for execution shall be applied for through a petition to be submitted to the execution judge by the concerned parties. Such petition shall contain the details specified in Article 16 of these regulations. The judge issues his order within no more than three days from the date of its submission. The order may be subject to appeal according to the rules and procedures prescribed for the appeals of

judgments. The order issued by the chief justice of execution court to append the execution stamp on the judgment issued by the High Court of Justice in London are not included into the concept of execution procedures, but rather is one of the introductory steps to the procedural actions that must be taken before commencing the forced execution procedures. Article 97 of the executive regulations indicated that (the execution must be preceded by a service of the execution writ). As a result of that, the execution is not considered to have been started merely by conducting the introductory steps. These introductions do not result in such legal effects that result from the procedures. It is known that if the execution judge has the exclusive jurisdiction to execute the execution writ and to dispose of all execution disputes as a matter of urgency, he has no jurisdiction to entertain the disputes that arise regarding disputes related to the execution introductory steps. Unless there is a provision that stipulates otherwise, they are matters precedes the commencement of execution. Although Article 85 of the executive regulations have given the execution judge in respect to foreign judgments and order, the jurisdiction to append the execution stamp on them. However, it has assigned the Court of Appeal the power to dispose of the dispute about the action taken by it to seal the execution stamp. Then the provisions of paragraph (3) of Article 173 of the Procedures Law stipulating that the rulings issued by the courts of appeal in the execution procedures to challenge by way of cassation the decision issued to append the execution stamp on foreign judgments and orders, are not applicable (the forced execution in the UAE by Dr. Muhammad Nour Al-Hadi Shahadta - page 395 and beyond)

Whereas the contested judgment was issued by the Dubai Court of Appeal on 02/05/2020 for an appealable ruling in accordance with Article 173 of the Civil Procedures Law as amended by Law No. 18 of 2018, the litigants according to this article shall originally challenge by cassation the rulings issued by the appeal courts if the value of the lawsuit exceeds two hundred thousand dirhams, or in case the valued is not determined. Whereas the provision in Article 152 of the Civil Procedure law stipulates that the date for challenging the judgment begins from the day following the date of its issuance, unless the law provides otherwise. And Article 176 of the Civil Procedure Law stipulates that the time limit for cassation appeal is sixty days. Where the appellant filed with the appellate newspaper on the 01/04/2020, then the appeal was submitted during the time limit and TA requests your esteemed court to accept the cassation appeal in the form. Further, the judgments of the Court of Appeal that adjudicates the existing dispute regarding execution procedures are the only ones that cannot be appealed by way of cassation as an exception from the original, it is not permissible to make analogy of it or expand its interpretation. As for the rulings issued in relation to the form of the appeal or regarding its acceptance, it may be challenged in this way because it falls within the scope of the rulings issued in the subject of the dispute before it and related to the execution procedures (Cassation Appeal No. 349/2017 Commercial - Dubai Court of Cassation - Hearing 01/03/2017). Whereas TA challenges the contested judgments as to accepting the appeal as to its form, then she requests your esteemed court to accept the cassation appeal in form.

**Second Facts:**

1)  TA was the wife of FA. SE is a sole establishment, and as described by the Judgment issued from the High Court of Justice, ES is simply another "cipher" and *alter ego* of FA and another attempt

by him to evade enforcement of the High Court of Justice's Judgment. SE is the registered owner of the Yacht Luna (IMO 1010222) (Exhibits Nos. 1, 2, 3 and 4 of TA's bundle of exhibits which was submitted along with her Enforcement Application No. 4128/2019 Commercial Execution on 08.08.2019)

2) TA obtained the following judgments from the High Court of Justice against both FA and ES, all judgments and orders were issued in Case No. FD13D05340:-

a) On 15.12.2016, TA obtained a judgment from the High Court of Justice in London in the Case No. FD13D05340 whereby TA's claims against FA were granted resulting in financial reliefs in the sum of £453,576,152. This comprises 41.5% of the total marital assets. The court ordered FA to pay to TA an amount of £350,000,000 based on her participation in the development of marital wealth. It is established by paragraph 3 of the final judgment that (TA's divorce petition was issued on 24th October 2013. H (FA) initially sought a stay of divorce proceedings on, forum non conveniens grounds. Subsequently, H withdrew his application for a stay and by letter from his solicitors, Sears Tooth, dated 18th June 2015, submitted to the jurisdiction. W's petition has since proceeded as an uncontested suit. A Decree Nisi was granted on 2nd December 2015. Accordingly, he participated and was represented in the case and provided information about the assets owned by him for the purposes of division.

   According to paragraphs 50 to 57 as set out in such judgment, it stated as follows:

   *50. For these reasons, on the evidence before me, I am satisfied and find as a fact that, notwithstanding the temporary hiatus described above, H and W's marriage lasted over 20 years from 1993 to October 2013 when W issued her petition; and the marriage only finally came to an end after a failed attempt at reconciliation, in late 2014.*

   *DID H MAKE A SPECIAL OR STELLAR CONTRIBUTION?*

   *51. H asserted in his statement of issues that he made a special or stellar contribution in the wealth creation which would justify a departure from a 50:50 division of the assets in his favour, However, save for explaining the difficulties of doing business in Russia and the legal problems he encountered with a large multi-national company ("the MNC") in holding onto his Russian Company shares, H did not to explain in his statements precisely why he could be said to have made a 'stellar' contribution. It is not clear, therefore, whether this line of argument would have been pursued by H at the trial However, ex abundantae cautelae, I summarise the basic facts of his business dealings as set out in his witness statement.*
   *52. In 1993, H acquired a 5% shareholding in the Russian company which had been granted an exploration licence from MNC to search for natural gas. The other shareholders were a subsidiary of the MNC and American company. Geological reports were prepared but, before*
   *production infrastructure could be built, in 1998 the Russian economy collapsed. The MNC had no money and the American company withdrew. H, however, continued with the project, took up a rights issue and worked hard to make his Russian company a success. Production began in 2001 and his Russian company developed into a valuable producer of energy. H encountered litigation problems with the MNC. In June 2005,*

*H transferred 51% of the shares in his Russian company to the MNC. However, disputes with the MNC continued. In late 2012, the MNC permitted H to sell his shares in his Russian company to another company. The price realised was US$1,375 billion.*

*53. In my judgment, whilst H clearly worked very hard to create wealth out of his Russian company and was resourceful, H's evidence falls far short of the exceptionality (or 'genius') test elucidated in authorities such as Sorrell, Cooper Hohn and Gray v Work (see above).*

*54. The following further points are pertinent. First, H's contribution was not 'unmatched' (to use Holman J's words in Gray v. Work): at the same time as H was away travelling and building up his Russian company in Russia, W was 'keeping the home fires burning' in Surrey, running the home and caring for the boys, as well as H's daughter in earlier years, on her own in what was then a foreign country to her. Second, this was a case of the realisation of his Russian company's value built up during the previous 20 years when the marriage subsisted, not merely of fresh accrual. H at one stage sought to argue that the Russian company's share were 'worthless' in 2004 because he could not sell them. This was clearly not the case because he sold 51% to the MNC in 2005. In any event, the point is academic because it is a fact that H sold his remaining shares. in his Russian company to the Russian company in 2012 for US$1,375 when the marriage was subsisting. Third, W is now only seeking 41% of the assets instead of a 50:50 split, which gives some margin of appreciation (see further below).*

*55. In my judgment, the present case is a paradigm example of what Lord Nicholls was talking bout in White when he said at [989]:*
*"If, in their different shares, each contributed equally to the family, then, in principle it matters not which of them earned the money and built up the assets"*

*56. For these reasons, I reject any case made by H that he made a special or 'stellar' contribution to the marital assets such as to justify a departure from the equality principle.*

*Summary of findings on 'departure points'*

*57. For the above reasons, I find that H has failed to prove any valid reasons or 'departure. points' which would justify the matrimonial property being divided other than equally 50:50. In particular, I find the following. First, that the marriage endured from 1993 until 2013 as W contends (and was not 'over' in 1999 or in 2004 as H's contends). Second, that there is no need to consider H's case on post-separation accrual because the wealth was generated during, and not after, the subsisting marriage, Third, that all the (considerable) wealth that was generated during the marriage is matrimonial property.* (Exhibits No. 5 of TA's bundle of exhibits which was submitted along with her Enforcement Application No. 4128/2019 Commercial Execution on 08.08.2019)

b)   By reason of the fact that FA evaded the enforcement of the judgment and transferred the marital properties which were awarded in favour of TA to companies owned by him, the High Court of Justice issued an order on 21.03.2018 in the same case against FA and SE, Accordingly, the Court ordered that SE is joined to the proceedings forthwith and that SE is the alter ego of FA. The court decided to pierce the corporate veil of SE since it is sole

establishment owned by FA. It ordered to transfer the ownership of yacht (LUNA) to TA who holds absolute beneficial title to the yacht in accordance with Article 24.1 of the Matrimonial Causes Act 1973 and Article 433.2 and 425.1.a of the Insolvency Law 1986. SE and FA were ordered to take all necessary and required measures to effect all necessary steps and formalities for the proper vesting in, and the transfer of such title to, TA. It was declared with immediate effect that TA is the legal and beneficial owner of the vessel. It was provided in paragraph 10 of the order that in case the said transfer of title is not effected within 7 days of the order date, SE shall pay a liquidated sum representing the capital value of the vessel in a sum of USD 487,278,000. (Exhibits No. 7 of TA's bundle of exhibits which was submitted along with her Enforcement Application No. 4128/2019 Commercial Execution on 08.08.2019)

c)   Further, the High Court of Justice issued an order on 21.03.2018, whereby it was ordered to freeze a number of the assets and properties of FA and SE. Paragraph 16 of the freezing order provides for that until a further order is issued by the court, SE must not in any way dispose of, deal with or diminish the value of any of its assets, whether by sale, charge or otherwise, and whether they are in or outside of the jurisdiction, up to the sum of $487,278,000. This prohibition includes in particular the vessel named "LUNA".  (Exhibit No. 8 of TA's bundle of exhibits which was submitted along with her Enforcement Application No. 4128/2019 Commercial Execution on 08.08.2019)

d)   On 19.04.2018, the reasons of the final order dated 21.03.2018 were issued. In paragraphs 82.2, 86 and 87, the High Court of Justice indicated the following:
*82.2 In respect of Straight, an order that Straight pay W the full value of the lump sum award against H up to the current value of the asset (namely, the current insurance value of M.V. "Luna" of $487,278,000) on the basis that the value of the asset placed beyond W's reach is greater than the total value of her claim.*
*86. I am satisfied that, both because of and notwithstanding H's history of hitherto disobedience of English Court Orders, it would be appropriate to extend the freezing injunction to cover also his 'ciphers', Avenger and Straight.  An extension may encourage and enable other Courts around the world with control of H's assets to assist this Court in enforcement as a matter of comity.*
*87. In conclusion, for the above reasons, I grant W's application for relief and make the Orders set out in the Order signed by me on 21st March 2018.* (Exhibit No. 9 of TA's bundle of exhibits which was submitted along with her Enforcement Application No. 4128/2019 Commercial Execution on 08.08.2019)

3)   All the above orders and judgments issued in the Case No. FD13D05340 have the force of res judicata and became final and conclusive as evidenced by the two certificates issued by the High Court of Justice on 02.10.2019 which shows as follows:-

**The First Certificate:** shows that the order made in the Case No. FD13D05340 on 21 March 2018 ("Order") is final and conclusive and the time period for appeal in respect of the Order having expired, with on appeal having been filed. Further, the judgment of 19th April 2018, being

the reasons for the making of the Order, did not revoke, replace or supersede the Order, such that the Order still stands. (Exhibit No. 1 of TA's bundle of exhibits to her memorandum of 11.12.2019 before the Court of Appeal in the Appeal No. 6/2019 Civil Order-on-Petition Appeal)

**The Second Certificate:** shows that judgments and orders issued by the court in the Case on 15 and 20 December 2016 and on 21 March and 19 April 2018 are final and conclusive and the time period for appeal in respect of all the stated judgments/orders having expired with on appeal having been filed. (Exhibit No. 2 of TA's bundle of exhibits to her memorandum of 11.12.2019 before the Court of Appeal in the Appeal No. 6/2019 Civil Order-on-Petition Appeal).

4) Based on the above documents, TA obtained on 12.07.2018 an order from the judge of urgent matters at Dubai Courts to effect the provisional attachment of the yacht Luna against FA and SE by virtue of the decision issued by the Order-on-Petition No. 385/2018 Commercial Provisional Attachment. The judge of urgent matters made his decisions which reads: *"having reviewed the face of the papers, the debt is temporarily estimated in the sum of $487,278,000 (or AED 1,790,746,650). We order to effect the provisional attachment on the vessel named "Luna" as detailed in the order, to prevent her from departure to secure the payment of the above-estimated amount, and that the procedures to be completed as per the law."* Then, the Case No. 1568/2018 Commercial was registered before the Court of First Instance to seek the enforcement of the judgment issued by the High Court of Justice in the matter of the Case No. FD13D05340 together with ordering FA and SE to deliver the possession of, and transfer the title in, the Yacht Luna to her, and to sustain and confirm the validity of the provisional attachment No. 385/2018 Commercial for the satisfaction of $487,278,000 (or AED 1,790,746,650 together with the courts costs and attorneys' fees.

5) The Court of First Instance dismissed the case. TA challenged the judgment by way of the Appeal No. 2646/2018 Commercial. On 27.03.2019, the Dubai Court of Appeal ruled to allow the appeal as to its form. The Court substantively ordered to reverse the judgement under appeal in respect of dismissing the application for enforcing the Judgement No. FD13D05340 made by the High Court of Justice in London. A new judgement was delivered that the Court lacks the subject-matter jurisdiction to entertain the same and referred it to the competent execution judge at Dubai Court of First Instance in accordance with Article 85.2 of the Civil Procedures Law. The Court upheld the judgment under appeal as to the remainder. Such judgment in relation to referring the application for enforcing the foreign judgment to the competent execution judge became final by virtue of the judgment issued by the Dubai Court of Cassation on 30.06.2019 in the Cassation Appeals Nos. 49/2019, 425/2019 and 320/2019 Commercial. (Exhibit No. 7 of TA's bundle of exhibits to her memorandum of 16.10.2019 before the Court of Appeal in the Appeal No. 6/2019 Civil Order-on-Petition Appeal)

6) Accordingly, on 29.04.2019, in implementation of the judgment issued to refer the application to enforce the judgment issued in case No. FD13D05340 to the competent execution judge, the chief justice of the execution court at Dubai Courts issued his first "original" order to append the execution stamp on the judgment issued by the High Court of Justice in London in the case No. FD13D05340. The operative part thereof decision reads as follows (*After review, we order to seal the*

*Judgment No. FD13D05340 issued by the High Court of Justice with the execution stamp.)* This decision was issued in writing by the chief justice of the execution court on the letter issued by the Dubai Court of Appeal to refer the file - in implementation of the judgment issued in Appeal No. 2646/2018 and upheld by the judgment issued in the cassation appeals nos. 49 + 425 + 320/2019 commercial - to the chief justice of the execution court dated 25/04/2019, who issued the above order in writing by hand. This was the order dated 04/29/2019. It is the first and original order issued to append the execution stamp on the judgment issued by the High Court of Justice in London (Exhibit No. (1) of SE's bundle of exhibit to its statement of appeal no. 6/2019 Civil Order on Petition)

7) On the same date, that is, on 29/04/2019, the file No. 14/2019 (order-on-petition execution stamp) was registered in accordance with the instructions of the chief justice of the execution court (and without a request from TA), in preparation for enabling her to submit the application for enforcing the foreign judgment to the Execution Judge Accordingly, Judge Abdullah Al-Kaitoub issued on 17/07/2019 an interim order which came as a repetition of the original first order issued by the chief justice of the execution court. It reads: *(we order to seal the Judgment No. FD13D05340 issued by the High Court of Justice with the execution stamp.)* This last order did not provide for a new order, but it was a repetition of the first order issued on 29/04/2019. (Exhibit No. (2) of SE's bundle of exhibit to its statement of appeal no. 6/2019 Civil Order on Petition)

8) Based on the above, TA registered the Execution No. 4128/2019 Commercial Execution on 08.08.2019 by a statement whereby TA sought from the execution judge to *"enforce the Judgment made in the Case No. FD13D05340 made by the High Court in London with the execution stamp, to deliver the possession of and transfer the title in the yacht Luna to TA for the satisfaction of $487,278,000 (or AED 1,790,746,650), and to order FA and SE to pay the courts costs and attorneys' fees.* (Exhibit No. 1 of FA's bundle of exhibits which was submitted along with his statement of appeal no. 10/2019 Civil Order-on-Petition Appeal).

9) The enforcement application remained before the execution judge at Dubai Courts and no decision was made. On 31.10.2019, TA applied to effect the executory attachment of the vessel Luna. On 10.11.2019, the execution judge granted her application to effect the executory attachment of the vessel Luna.

10) On 30.07.2019, SE filed the appeal No. 6/2019 Civil Order-on-Petition Appeal seeking to reverse the two orders under appeal: (1) the order of 29.04.2019 which was made by the chief justice of execution court whereby it was ordered to seal the Judgment FD13D05340 made by the High Court in London with the execution stamp; and (2) the interim order of 17.07.2019 which was made by the judge Abd Allah Al-Kaitoub which provides for that we order to seal the Judgment FD13D05340 made by the High Court in London with the execution stamp.

11) On 30.07.2019, FA filed the Appeal No. 10/2019 Civil Order-on-Petition Appeal against the order issued by the chief justice of execution court on 29.04.2019 in the Order-on-Petition No. 14/2019 Execution Stamp. The Court of Appeal decided to join the two appeals in order for one judgment to be entered.

12) In defending against the two appeals, TA submitted two original and alternative defences as follows:

**First Argument: Originally:** TA submitted that the two appeals should be declared inadmissible based on the fact that the two orders under appeal were issued under the ex parte powers of the chief justice of the execution court as an introductory step to enable TA to submit her application to enforce the foreign judgment before the Execution Judge by virtue of a statement containing the details specified in Articles 85 and 16 of the Regulations to the Civil Procedures Law. Until the date whereon the two orders under appeal were issued, the execution judge did not decide whether or not the foreign judgment should be enforced. This is simply because TA did not file her statement of enforcement which contains the details specified in Articles 85 and 16 of the Regulations to the Civil Procedures Law.

**Second Argument: In the alternative:**  TA submitted that her application to enforce the judgment made by the High Court of Justice  - in case the court holds that the first issued order was issued in acceptance of enforcing the foreign judgment - satisfied all requirements stated in Article 85 of the Regulations to the Civil Procedures Law. TA indicated that it is established that she produced the following exhibits, during the consideration of the substantive case no. 1568/2018 before the Dubai Court of First Instance:

i. The original final order made by the High Court of Justice in 21.03.2018 in the Case No. FD13D05340, whereby TA was declared the legal and beneficial owner of the Yacht Luna and that SE and FA were ordered to transfer the title to the yacht Luna into TA's name. (Exhibit No. 1 of TA's bundle of exhibits which was produced at the hearing of 12.09.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

ii. The original freezing order made by the High Court of Justice on 21.03.2018 in the Case No. FD13D05340, whereby SE and FA were precluded in any way from disposing of, dealing with or diminishing the value of the yacht Luna, whether by sale, charge or otherwise. (Exhibit No. 2 of TA's bundle of exhibits which was produced at the hearing of 12.09.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

iii. The original judgment made by the High Court of Justice on 19.04.2019 in the Case No. FD13D05340, being the reasons of the final order of 21.03.2018 (Exhibit No. 3 of TA's bundle of exhibits which was produced at the hearing of 12.09.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

iv.   The Matrimonial Causes Act 1973 (Exhibit No. 1 of TA's bundle of exhibits which was produced at the hearing of 26.09.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

v.    The British Family Law Act 1986 on the recognition of overseas divorce, annulment or legal separation judgments (Exhibit No. 2 of TA's bundle of exhibits which was produced at the hearing of 26.09.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

vi.   The judgment made by the Royal Court of Justice of London in the Case No. FD1600059 and ZE16P00521 that judgment made by the United Arab Emirates Personal Status Court (Dubai Courts) was recognised and enforced in favour of the father. Also, the mother's application for filing a new case before the English courts was dismissed due to the fact that the matter of the case has already been decided by the Dubai Courts and that the Courts of England recognised, enforced and executed the judgment issued by the Dubai Court. (Exhibit No. 3 of TA's bundle of exhibits which was produced at the hearing of 26.09.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

vii.  The opinion of Lord Collins (as an expert) regarding the enforcement of judgments issued by the UAE courts before the English courts. He confirmed that the English courts apply the principle of reciprocity. He concluded in his legal opinion that the English courts accepts the recognition and enforcement of judgments issued by the UAE courts in accordance with Article 46.2 of the Family Law 1986. (Exhibit No. 4 of TA's bundle of exhibits which was produced at the hearing of 26.09.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

viii. A letter dated 18.06.2018 from FA's lawyer (Sears Tooth) whereby they acknowledge in writing before the High Court of Justice that their client has decided not to proceed with his application to stay the divorce proceedings before the English High Court of Justice, so that TA can proceed with the divorce proceedings before the present jurisdiction. This means he accepted to submit to the jurisdiction of the High Court of Justice. He also acknowledged that he would pay the litigation costs, proving that FA had been properly notified, appeared before the court by a lawyer, and accepted the jurisdiction of the English courts to hear the Case No. FD13D05340, subject matter of the enforcement application. (Exhibit No. 1 of TA's bundle of exhibits which was produced at the hearing of 24.10.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

ix.  The order issued by Judge Roberts in the closed hearing held on 11.04.2016 in the Case No. FD13D05340 that FA attended the hearing through the video link (alternative ways of attendance) and was represented by Timothy Bishop QC and Simon Webster. This proves that FA was properly notified and properly represented and attended before the court. (Exhibit No. 2 of TA's bundle of exhibits which was produced at the hearing of 24.10.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

x.  The affidavit of James Cobson dated 06.04.2018 in response to the five questions which proves that FA has been fully represented in the divorce proceedings, was properly notified in accordance with the law, and that he accepted to submit to the jurisdiction of the English courts and that he also attended the court hearing 25.10.2016. (Exhibit No. 3 of TA's bundle of exhibits which was produced at the hearing of 24.10.2018 before the Dubai Court of First Instance during the consideration of the substantive case no. 1568/2018)

xi.  It is evidenced by the affidavit of James Cobson dated 11.06.2018 that SE was notified through FA by reason of the fact that SE is the alter ego and privy of FA. SE was notified personally through the registered email of her agent and was notified also by way of email. (Exhibit No. 24 of TA's bundle of exhibits which was submitted along with her Enforcement Application No. 4128/2019 Commercial Execution)

xii.  Further, it is established that TA produced during the consideration of the Appeal No. 2646/2018 before the Dubai Court of Appeal the original certificate issued by the High Court of Justice which confirms that the judgments issued on 15.12.2016 and 20.12.2016 and 21.03.2018 and 19.04.2018 in the Case No. FD13D05340 are final and conclusive. Such certificate was properly attested with all official entities. The legal translation thereof was submitted.  (Exhibits Nos. 1 and 2 of TA's bundle of exhibits which was submitted at the hearing of 26.12.2018 before the Dubai Court of Appeal during the consideration of the Appeal No. 2646/2018 Commercial)

xiii. Further, it is established by the certificate issued by the High Court of Justice in the Case No. FD13D05340 that that the judgments and orders issued on 15.12.2016 and 20.12.2016 and 21.03.2018 and 19.04.2018  are final and conclusive and the time period for appeal in respect of all the stated judgments/orders having expired with on appeal having been filed. The certificate was properly attested and authenticated with all official entities. (Exhibit No. 1 of TA's bundle of exhibits which was submitted at the hearing of 11.12.2019 before the Dubai Court of Appeal during the consideration of the Appeal No. 10/2019 Civil Order-on-Petition)

xiv. The certificate issued by the High Court of Justice in the Case No. FD13D05340 shows that the order made in the Case No. FD13D05340 on 21.03. 2018 ("Order") is final and conclusive and the time period for appeal in respect of the Order having expired, with on appeal having

been filed. Further, the judgment of 19th April 2018, being the reasons for the making of the Order, did not revoke, replace or supersede the Order, such that the Order still stands. The certificate was properly attested and authenticated with all official entities. (Exhibit No. 2 of TA's bundle of exhibits which was submitted at the hearing of 11.12.2019 before the Dubai Court of Appeal during the consideration of the Appeal No. 10/2019 Civil Order-on-Petition)

xv. The judgment issued by the English High Court of Justice in the same Case No. FD13D05340 that shows in paragraph 6 thereof that the transfer the ownership of the yacht into TA's name – as ordered by the same court on 21.03.2018 - and in the event of a default, SE is obliged to pay to TA the amount of US $487,278,000 is a concurrent obligation, i.e. he obligation to transfer the yacht Luna into the name of TA runs in parallel and concurrently along with the other obligation to pay the sum of money. This is not alternative obligation as claimed by FA and SE (Exhibit No. 3 of the bundle of exhibits attached hereto)

xvi. It is established that FA and SE have no domicile, place of residence or place of work. This denies the jurisdiction of the state courts to consider the case in which the foreign judgment sought to be executed was issued. The consideration must be given to the date of filing the Case No. FD13D05340, and not a later date. The decisive point in determining the domicile is the date whereon the dispute arose, and therefore the exclusive jurisdiction of the courts of the United Arab Emirates is excluded. Thus, TA has proven that the United Arab Emirates courts had no exclusive jurisdiction to hear the case in which the High Court of Justice issued the judgments and orders, subject of execution.

xvii.      TA produced evidence and demonstrate that all judgments and orders issued by the High Court of Justice became final and non-appealable by any method of appeal. All of them obtained the force of res judicata.

xviii.      The judgments and orders were issued by a competent court in accordance with the English law. The litigants in the case were properly summoned and represented and accepted to submit to the jurisdiction of the English Court. It is evidenced by the affidavit of James Cobson dated 11.06.2018 that SE was notified through FA by reason of the fact that SE is the alter ego and privy of FA. SE was notified personally through the registered email of her agent and was notified also by way of email. (Exhibit No. 24 of TA's bundle of exhibits which was submitted along with her Enforcement Application No. 4128/2019 Commercial Execution)

xix. Further, SE and FA failed to provide any evidence to show that the judgments and orders issued by the High Court of Justice are in a conflict with a judgment previously issued by a state court, or that they contain what is contrary to public order and morals. This position may not be impaired by their unsubstantiated allegations that that the judgments issued by the High Court of Justice are in violation of Islamic Sharia. The matrimonial sharing principle is a system which is supported by the provisions of Islamic Sharia. Article 62 of the UAE Civil Status Law No. 28/2005 as set out in the effects of marriage chapter provides for that "if a spouse participates in the development of a property or home and the like, he/she shall have recourse against the other party to receive his/her share upon divorce or death." This is the same

principle applied in the judgment of the High Court of Justice. It dealt with the marital assets as assets belonging to the spouses and a wealth related to marriage obtained during the marriage period through the contributions and participation of the husband and wife (paragraphs 104 to 113 of the judgment issued by the High Court of Justice on 15.12.2016). Therefore, there is no violation of the provisions of Shari'a law or the UAE public order and morals.

13) On 05.02.2020, the Dubai Court of Appeal issued the contested judgment and ruled _to grant the two Appeals as to their form. Second: As to the merits of the two Appeals, to overturn the order under appeal which was issued in the matter of the Order-on-Petition No. 14/2019 Execution Stamp, and to deliver a new judgment that is to dismiss the application made to seal the foreign judgment and the ancillary orders thereof – which were issued by the High Court of Justice in London under the number FD13D05340 – with execution stamp. The Court orders the First Respondent in the matter of the two Appeals to pay the costs of the two appeals and AED 2,000 of attorneys' fees_. The Court of Appeal rested its judgment on the following reasoning:

(_As to the appealability and the subject matter jurisdiction, they are public order matters which are automatically raised before the court and of which the court, of its own motion, has to dispose. The order may be challenged by way of appeal. This is the method defined in Article 85.2 which provides for that "the application for execution, including the particulars specified in Article (16) of this Regulation shall be made on a petition and submitted by the person concerned to the execution judge. The judge shall issue his order within three days from the date of its submission. An Appeal may be filed in accordance with the rules and procedures established for appealing against judgments." The execution judge has the subject matter jurisdiction to seal the foreign judgments and orders with execution stamp. Whereas the Appeal No. 6/2019 has satisfied all formalities required in the law, the appeal is granted as to its form._

_Whereas the Court did not find something contrary to the Appellant's statements that he knew about the order under appeal on 25.08.2019 upon taking receipt of the execution writ and filed the present appeal on 04.09.2019; therefore; the appeal has been filed on time as the time limit for appeal started only from the date on which the execution writ was served upon it on 25.08.2019. As such, the Appeal is granted as to its form._

_As to the subject matter of the two appeals and within the limits of the grounds upon which they are premised, the court- in anticipation of its judgments provides as follows:_

_Article 3 of the Civil Transactions Law provides for that: "Public order shall be deemed to include matters relating to personal status such as marriage, inheritance, and lineage, and matters relating to sovereignty, freedom of trade, the circulation of wealth, rules of private ownership and the other rules and foundations upon which society is based, in such manner as not to conflict with the definitive provisions and fundamental principles of the Islamic Sharia."_

_It has been long the practice of the UAE courts that the public order shall be deemed to include matters relating to personal status such as marriage, inheritance, and other matters as set out in the provisions of law. They may not be violated for the sake of the purpose or intent of the text. (Cassation Appeal No. 144/2014 Personal Status)_

_It is legally settled that according to Sharia law, the Islamic financial system applied between spouses is the absolute separation system. Each spouse enjoys a totally independent and separate financial liability than the other. The husband is not entitled to receive any share of the properties and wealth of his wife, either during their marriage or after their separation. Likewise, the wife is not entitled to receive any share of the properties and wealth of her husband, unless within the limits defined by Sharia as to the duty of maintenance during marriage or waiting period after divorce,  or post-divorce matta'a (support) or custody fees. Apart from this, the wife is not entitled to receive_

*any share of the property and assets of her husband, whether such properties were acquired by the husband before or during marriage or after the divorce. divorcee, whether such properties were acquired during marriage or after divorce. Article 62 of the Personal Status Law provides for "A woman having reached the age of full capacity is free to dispose of her property and the husband may not, without her consent, dispose thereof; each one of them has independent financial assets."*

*Article 85 (1 & 2) of the Regulations provides for as follows:*

*(1) Judgments and orders delivered by a foreign country may be ordered to be executed in the State under the same conditions as prescribed in the law of that country for the execution of judgments and orders issued in the State.*

*(2) The application for execution, including the particulars specified in Article (16) of this Regulation shall be made on a petition and submitted by the person concerned to the execution judge. The judge shall issue his order within three days from the date of its submission. An Appeal may be filed in accordance with the rules and procedures established for appealing against judgments. It shall not be possible to order the execution before the verification of the following:*

*a-The Courts of the State are not exclusively competent in the dispute in which the judgment or order was rendered and the foreign Courts that issued it are competent in accordance with the rules of international jurisdiction established by their law.*

*b-The judgment or order is delivered by a Court in accordance with the law of the country in which it was issued and duly ratified.*

*c-The litigants in the case in which the foreign judgment was delivered were summoned and were duly represented.*

*d-The judgment or order has the force of res judicata in accordance with the law of the Court which issued it, provided that the judgment has acquired the force of res judicata or provided for in the same judgment.*

*e-The judgment does not conflict with a judgment or order rendered by a Court of the State and does not contain anything contrary to public order or morals.*

*Having regard to the foregoing and whereas; the foreign judgment – and the subsequent orders thereof – were issued by the High Court of Justice, Family Division in London under the No. FD13D05340 on 15 December 2016 and was recently submitted to the Execution Judge at Dubai Court to seal the same with the execution stamp.*

*Reviewing the above judgment, it was issued in divorce proceedings between the Appellant and the First Respondent (in the matter of the Appeal No. 10/2019). She presented her case as she was the wife of the Appellant and a housewife throughout her marriage. She stated that the total wealth of the spouses exceeds one billion British pounds and that the wealth in such case is matrimonial in character, that is to say that this wealth was acquired and built up during their long marriage by the parties' equal contributions to the welfare of the family, and which should be subject to the sharing principle.  This was the substance of a case of the wife, the First Respondent.*

*As to such case, the foreign judge decided in Paragraph 107 of the above judgment that: "I find that his entire wealth is matrimonial in character, i.e. it was acquired and built up during the long marriage by H and W's equal contributions to the welfare of the family, and should be subject to the sharing principle. Accordingly, I can see no reason in principle why there should not be an equal 50:50 division of the total marital assets in this case, i.e. £1,092,334,626…." Then, the foreign judge held in Paragraph 111 of the judgment that: "The total value of W's claim is now, therefore, £453,576,152. This comprises some 41.5% of the total marital assets. I find that this figure is justified in all the circumstance. I shall so order"*

*It follows from this that the order was made under the said foreign judgment in favour of the wife based on the sharing principle applicable in the English law. In doing so, it decided to divide the wealth of the husband - the Appellant – which he obtained by his effort, and as such it is his own property. According to the Islamic Sharia, the wife has no right to such property, except with his consent. It follows that the judgment and the orders issued to execute the same violate the Islamic Sharia and the public orders and morals as a result. Therefore, the above*

*judgment violates the conditions - set out in Article 85.2.e of the Implementing Regulations to the Civil Procedures Law - which are lawfully required for ordering to enforce the same and sealing it with the execution stamp. As such, it is not valid to seal the same with execution stamp and to enforce it in the UAE.*

*Whereas the competent judge ordered to seal the judgment issued by the High Court of Justice under the No. FD13D05340 with execution stamp; he violated the law. This Court orders to revoke his orders and delivers a new judgment in the matter of the Order-on-Petition No. 14/2019 Execution Writ that is to dismiss the same. Accordingly, the Court sees no need to deal with the remaining grounds and arguments set out in the two appeals. As to the costs of the two appeals, the Court orders the First Respondent in the two appeals to pay the same in accordance with Article 168 of the Civil Procedures Law and Article 55 (1, 2) of the implementing regulations thereof.)*

**Third: Grounds of Cassation Appeal:** The contested judgment violated the law, erroneously applied the law, employed irrational and deficient reasoning, violated what have been established by papers and infringed the right of defence when it ruled to dismiss the application made by TA to seal the foreign judgment and the ancillary orders thereof – which were issued by the High Court of Justice in London under the number FD13D05340 – with execution stamp and to order TA to pay the costs of the two appeals and AED 2,000 of attorneys' fees. Such judgment was rested on that the sharing principle applicable in English Law violates the Sharia Law and as a result contrary to the public orders and morals. This is explained in the below grounds:

**(1) First ground: Violation of the Law, employment of illogical reasoning, deficient reasoning and violation of what have been established by papers when the contested judgment accepted the appeal no. 6 of 2019.** The contested judgment wrongly stated that the Court did not find something contrary to the Appellant's statements that he knew about the order under appeal on 25.08.2019 upon taking receipt of the execution writ and filed the present appeal on 04.09.2019; therefore; the appeal has been filed on time as the time limit for appeal started only from the date on which the execution writ was served upon it on 25.08.2019. As such, the Appeal is granted as to its form.

Whereas, the first "original" appealed order issued by the Chief Justice of the Court of Execution was issued on 25/4/2019 to append the execution stamp on the judgment issued by the High Court of Justice, and whereas, according to what the contested judgment concluded, that this order was issued according to Article 85 of the regulations of the Civil Procedure Law, the deadline for appealing against this order is 30 days, ending on 26/05/2019.

Whereas, the appeal No. 6 of 2019 was filed on 30/07/2019, and the appeal No. 10 of 2019 was filed on 04/09/2019.

The "original" first appealed order was issued in accordance to the ruling of the judgment in the appeal no. 2646/2018 commercial (the dismissal of the prayer to enforce the Judgment No. (FD13D 05340) which is issued by the High Court of Justice in London. A new judgment was delivered that the courts lacks the subject-matter jurisdiction and referred the case – as is - to the competent execution judge at the Dubai Court of First Instance, for consideration, … etc.)

Based on the referral order, the case No. 1568 of 2018 Commercial Full was re-registered under the order on petition no. 14/2019, whereby the judge issued his order on 29/04/2019 whose operative part reads as follows: (We order the seal the judgment fd13d05340 from the High Court of London with the execution stamp.)

And whereas it was established by the documents that the judgment issued in the appeal No. 2646/2018 commercial (that the court lacks the subject-matter jurisdiction and that the case 'as is' is referred to the competent execution judgment at the Dubai Court of Cassation for consideration, etc) was issued in the presence of the parties,

And whereas Article (31/1) of Cabinet Resolution No. (57 of 2018) regarding the executive regulations of Federal Law No. (11) of 1992 regarding the Civil Procedures Law provides for that: (The opponent who was notified of the case shall follow up on its postponements, the dates of its hearings and procedures. The judgments and decisions of the court, the supervising judge and the case management office, as the case may be, which are issued after the litigation are held, shall produce its effects without the need for service of a notice except for the administration of the oath.).

Tt follows from this that SE and FA were aware of the decision issued by the judge of execution on 16.07.2019 which was issued upon the appellate judgment which was made in the presence of the parties to refer the case to the execution judge. In the Appeal No. 2646/2018 Commercial, the appellants should have followed up on the outcome of appellate judgment - which referred the case to the execution judges in accordance with the provisions of Article 31/1 of the aforementioned executive regulations – which is issued by the execution judge.

It is established the deadline for appeals expired on 15.08.2019. It is established by the papers that the appeal No. 6/2019 was registered on 4/9/2019 outside the deadline. Therefore, the appellate judgement should have not allowed it for being filed outside the deadline.  However, the appellate judgement allowed the appeal as to its form based on its reason that: (the Appeal No. 6/2019 has satisfied all formalities required in the law, the appeal is granted as to its form. Whereas the Court did not find something contrary to the Appellant's statements that he knew about the order under appeal on 25.08.2019 upon taking receipt of the execution writ and filed the present appeal on 04.09.2019; therefore; the appeal has been filed on time as the time limit for appeal started only from the date on which the execution writ was served upon it on 25.08.2019. As such, the Appeal is granted as to its form.) As such, the contested judgment employed illogical reasoning and misinterpreted the law. Therefore, it should be overturned in this regard. Since this defence concerns the public order, it may be raised for the first time before the Court of Cassation and it may decide suo motu on the same. It follows that the Court of Cassation shall decide on this argument and consequently rule that the appeal is not admissible as to its form.

**(2) Second ground: The contested judgment violated the law, erroneously applied the law, employed irrational and deficient reasoning, violated what have been established by papers and infringed the right of defence when it overturned the order under appeal which was issued in the matter of the Order-on-Petition No. 14/2019 Execution Stamp, and delivered a new judgment that is to dismiss the application made by TA to seal the foreign**

**judgment and the ancillary orders thereof – which were issued by the High Court of Justice in London under the number FD13D05340 – with execution stamp based on the stated reason that sharing principle applicable in English Law violates the Sharia Law. This is due to two aspects as explained below:**

That the system for sharing wealth between spouses in force in English law does not violate the provisions of Islamic Sharia or public order and morals. This is because the concept of violating the provisions of Islamic Sharia, which is considered to be of public order and morals and which it is not permissible to agree on what violates it, occurs in case of the failure to observe the total fundamentals of Islamic Sharia in which ijtihad is not permissible since they are provisions of express evidencing and indication. There are no provisions of express evidencing and indication in relation to the sharing of wealth in this regard. On the other hand, a violation of the provisions of Islamic Sharia related to discretionary principles on which the jurists may agree or disagree in understanding and extracting the rules shall not be a violation of the total fundamentals of Islamic Sharia. Therefore, it shall not be considered of the public order and it is permissible to agree on what violates it. This is explained in four aspects as follows:

1.   **First Aspect**: It has been consistently held by the Supreme Union Court – as reflected in the Case No. 1/2014 Constitutional that: (Article Seven of the Federal Constitution stipulates that "Islam is the official religion of the Federation and Islamic Sharia is a main source of legislation". This indicates that the constitution has placed a restriction on the constitutional authority to the effect of restricting the legal provisions to be adopted in order to observe the total fundamentals of Islamic Sharia in which ijtihad is not permissible since they are provisions of express evidencing and indication. They do not change with the change of time and space because they represent the constants of Islamic Sharia – in terms of a source and interpretation. It is not permissible to depart from them or twist the meanings thereof. They are the core and focus of Sharia which the constitution considered it to be a fundamental parameter by which such provisions are measured. There should be no disagreement as to its principles of express evidencing and indication. As previously said - given that there must be no ijtihad in relation to the conclusive provisions, such provisions may not be subject to interpretation or alteration. However, this is not the case with the suppositional provisions of either conclusive establishment or significance. This is because the circle of ijtihad is restricted thereto it and does not extend to others. They are evolving in nature, changing with the change of time and space to ensure its flexibility and vitality, to confront the different novelties, to regulate the affairs of the people, and to guarantee their legitimate interests with a view that the people's movement in life are not disrupted due to rigid provisions, which contradicts the Sharia and its flexibility as long as they are in line with the total fundamentals of the Shariah, and do not exceed it, and that they are extracted through the path of the narrated and logical evidences; ensuring that the general purposes of the Shariah are attained, that's it to preserve religion, soul and mind, honour and money). (Cassation Appeal No. 1 of 2014 Constitutional - Supreme Union Court – hearing 25.11.2014)

It has been accustomed in the justice of your honored Cassation that the judgments related to personal affairs, such as marriage, inheritance, and lineage, are matters of public order. Every legitimate (Sharia-based) provision that is indicated by an express provision of conclusive evidencing and indication is deemed to be matter of public order. This means that it may not

be violated. (Challenge No. 51/2008 Personal Affairs Challenge - Dubai Court of Cassation – hearing of 21.10.2008 and Challenge No. 5/2015 Personal Status - Dubai Court of Cassation).

**The sharia provisions is divided into two main sections:**

**First Section:** provisions indicated by an express provision of conclusive evidencing and indication

**Second Section:** Include (1) provision of conclusive evidencing and speculative indication, (2) a provision of speculative evidencing and conclusive indication, and (3) a provision of speculative evidencing and speculative indication.

What relates to the total fundamentals of Sharia and public order are those the sharia provisions of the first section only which are the provisions indicated by an express provision of conclusive evidencing and indication. The sharing principle is not of course one of these provisions.

This is because, according to the ruling of your honourable court, the provisions of conclusive evidencing and indication such as the verses of the Holy Qur'an that show the inheritance system in Islam, prayer, acts of worship, and legal lineage without adoption and marriage are considered to be a part of the public order, and no agreement otherwise shall be made.

It follows from this that the local and foreign legal provisions are to be deemed in violation of the provisions of Islamic Sharia only in case they fail to observe the total fundamentals of Islamic Sharia in which ijtihad is not permissible since they are provisions of conclusive evidencing and indication. In case there is no such observance, it would be contrary to public order. Apart from this, there is no violation of Islamic Sharia and public order. It follows that the sharing principle is permissible, whether by law, agreement or judicial judgment because if the principle of sharing wealth is contrary to the general system, the agreement between the two parties is not permissible under a contract and it may not be required to be in the marriage contract.

Furthermore, it is resolved in the provision of Articles (199 and 205) of the UAE Civil Transactions Law that every contract shall have a subject thereof, being the performance of which the debtor is obliged, and that the subject shall be governable by the contract. So, if the subject of the contract is in violation of the public order and morals, the contract shall stand invalid for its violation of the public order, a thing which shall be ruled by the court by itself, even if not insisted on by either opponent in a case. This indicates that no agreement may be made on what is in violation of the public order and morals.

In support of the above, the ruling of the Dubai Court of Cassation in Challenge No. 93 of 2008 (Personal Status) concluded that a woman's conditioning in her marriage contract to be entitled to share her husband's properties upon divorce involves no violation of the Islamic Sharia and the public order. In case No. 894/2007, personal status Muslims - Dubai Court of First Instance, one of the plaintiff's prayers was to order the defendant to fulfil the condition stipulated in the marriage contract, whereby she is entitled to receive half of her husband's property according to what she stipulated in their marriage contract in case he divorced her

without her request or by virtue of a court's judgment due to his bad morals or failure to perform his duties. The Dubai Court of First Instance in that case ruled to dismiss her prayer on the basis of that it is not acceptable due to her ignorance since the plaintiff did not indicate the nature of such properties.

Such judgment was appealed by way of the appeal No. 205/2008 Personal Status. The Court of Appeal ruled that such a condition doesn't make a forbidden matter permissible and doesn't make a permissible matter forbidden, does not contradict the purpose or origin of contracting, and is not forbidden by Sharia. However, the court decided to reject this request on the basis that this condition includes obligating the husband to financial rights upon the occurrence of divorce. It is well established by Fiqh that the husband must accept this condition in order for it to be fulfilled and it is not sufficient to accept the marriage contract, but there is must be an explicit statement of acceptance of the condition.

**The judgment was challenged by the cassation appeal No. 93/2008 personal status, whereby the Court of Cassation ruled to overturn the judgment in this regard, then awarded in favour of her the remedies she sought in the appeal, i.e. half of his properties. The court reasoned**: (Whereas, the applicant sought to receive half of the respondent's property based on the fact that the two parties agreed on the same in the marriage contract in the event of the respondent divorces her. Whereas, it is stipulated under Article (20) of the Personal Status Law that each of the spouses may include such conditions as they may choose in writing in the marriage contract, except such conditions which make a forbidden matter permissible or make a permissible matter forbidden, which contradict the purpose or origin of contracting, or which are forbidden by Sharia. And what the appellant stipulated in her marriage contract dated 5-11-1987 with the number 3525 - according to the translation thereof which the appellant did not object to – is that "if the divorce occurs without her request or if the divorce did not result from a court ruling on the basis of bad morals of the wife or her failure to perform her duties, the husband must give half of his property that he had during the marital period without consideration or its equivalent according to the opinion of the court." **And such a condition doesn't make a forbidden matter permissible and doesn't make a permissible matter forbidden**, does not contradict the purpose or origin of contracting, and is not forbidden by Sharia. So, the respondent shall satisfy this condition in case the contents thereof materialises. Therefore, the appellant deserves half of the respondent's property that he had during the marital period, as she stipulated on him in her marriage contract signed by him. Whereas, the case papers in this condition are not sufficient to form the court's conviction about the reality of what the respondent owns during the marital period before the date of the divorce on 19-11-2007, which the appellant deserves half of it, and the court holds in order to determine the reality of the case to appoint an expert to perform the assigned indicated in the operative part of this judgment). (Cassation Appeal No. 93 of 2008 Personal Status – Dubai Court of Cassation – hearing of 20.01.2009)

**Therefore, and based on all the foregoing**, We conclude that the principle of sharing the wealth in force in English law does not violate the provisions of Islamic Sharia or public order and morals in the state. Accordingly, the contested judgment violated the law, erroneously applied the law, employed irrational and deficient reasoning, which requires the reversal of the

contested judgment and new judgment should be entered that the judgment issued by the High Court of Justice in the matter of the Case No. 5340FD13D0 and the subsequent orders do not violate the Sharia Law and public orders and morals.

2. **Second Aspect**: as indicate above, the provision of Sharia is indicated either by (a) an explicit text of conclusive evidencing and indication. (b) an explicit text of conclusive evidencing and suppositional indication. (c) suppositional evidencing and conclusive indication. or (d) suppositional evidencing and indication. What related to the public order according to the rulings of the Union Supreme Court (whose judgments can be invoked against all) and the rulings of the Court of Cassation is the explicit text of conclusive evidencing and indication such as the verses that show the inheritance system in Islam, prayers and acts of worship, legal lineage without adoption and marriage without the intimate relationship.

All the Sharia provisions indicated by explicit text of conclusive evidencing and indication are considered of the public order and it is not permissible to violate the same, with exception of the provisions which are derived from such fundamentals are Ijtihad provisions on which the jurists may agree or disagree in understanding and extracting the rules.

Having regard to the foregoing, the compulsory will regulation was enacted in accordance with Article 272 of the UAE Personal Status Law No. 28 of 2005 which provides for that whoever dies or is considered dead and has grandsons from his son or his daughter and this latter died before or with the testator, the grandsons shall be entitled to a mandatory will for one-third of the estate within the following limits and conditions: …. etc.

The Constitutional Court ruled in the aforementioned cassation appeal that to the aforementioned article is deemed constitutional. It reasoned that: (There is no prejudice to the total fundamentals of the Islamic Sharia which are of conclusive evidencing and significant. Accordingly, those of authority are entitled – based on their power to resolve disagreements in ijtihad matters – to stipulate the same given that the Imam's order is preferable - as mentioned in the memorandum of the aforementioned law - or permissible, which he can make it obligatory when needed. The contested text doesn't violate a sharia provision of conclusive evidencing and indication). The judgment concluded that matter was in line with Sharia law, does not contradict the intentions thereof, and observes the fundamentals in a way that enhance people's lives and meet their needs.

Based on the above, it is stipulated in the Maliki sect of Islam that Property in Islam is nothing else than a type of the succession of the real owner, being Almighty Allah, of all what appears on the ground and becomes accessed by human beings. A human being's ownership of a property is a result of his prior access and work, a thing which renders property, in general, to be within the limits of the orders, prohibitions, and guidelines of Almighty Allah, for which He has intended to further the interest of all the people, whether individuals or groups, and by such, a property is not an absolute right, but instead, it is a restricted right, and as such, the Ruler may, for example, ban monopoly and expropriate the property of an individual for the public interest.

Based on such, the Sharia has set forth the system of ownership and as such, it imposed instructions on how would people dispose their properties, along with instructions about

spending, and Quranic versus about inheritance and the shares of the inheritors. Property in Islam is subject to the orders and prohibitions of Almighty Allah. Therefore, the State has the authority to restrict the right of ownership, in pursuance of the saying of Almighty Allah: (*Those who, if We give them power in the land, establish worship and pay the poor-due and enjoin kindness and forbid iniquity*). Some of the most important responsibilities of a ruler are to prevent injustice and infringement and to establish justice amongst the people in service of the interest of the ruled subjects, as the ruler's action in this regard is subject to interest and it is mandatory to obey the ruler in what he orders, subject to that such order shall involve no violation of the Orders of Almighty Allah. **("Al-Ashbaah We Al-Nazaa'ir", Ibn Nujaim, page 123, "Al-Ashbaah We Al-Nazaa'ir" Al-Siyouti, page 123, Ibn Al-Qayyem, "Al-Turuq Al-Hikemiyaa")**

Islam has given the ruler wide authorities for the furtherance of the intentions of Sharia and the accomplishment of the interests of the people and bringing what is useful to them and avoidance what is harmful to them. For instance, when Medina has an emergency which a group of people in need arrived thereto, the Messenger of Allah (Peace Be Upon Him) prohibited storing the flesh of slaughtered lambs and when such group left the city, he permitted storing such flesh, and He Said: *"I have prohibited you from storing flesh because of the people of need who have arrived amongst you. So, eat, store, and donate to the needful".* By such, the Messenger of Allah (Peace Be Upon Him) has promulgated the rule of that the ruler may take whatever action he deems appropriate for the furtherance of the public interest if there is a requirement for such intervention in the properties of the people and for his intervention in restricting their disposal of what they own "property". **("Haashiyet Bin Aabdeen" – Part 5, page 49)**

The principles on which the ruler may rely in his restriction of ownership do also include the rule *"Necessities permit prohibitions."*, and the rule *"A public need is a public necessity."* A public need is a need which, if not satisfied, exhaustion and tiredness will be sustained, whereas a necessity is a thing, which if not satisfied, people will perish or almost perish. The assessment of necessity and need belongs to the discretion of the peoples of opinion, diligence, and knowledge of the interests of the nation, in pursuance of the saying of Almighty Allah: *(whereas if they had referred it to the messenger and to such of them as are in authority, those among them who are able to think out the matter would have known it)* **"Women 83".**

Furthermore, it is stipulated in the Maliki sect of Islam that a husband shall have an authority over what is related to his wife property in terms of sale, purchase, and acknowledgment. This includes all her acts that fall within the scope of the disposal of her property, whereas what is done by her as falling within the scope of charities, such as donations, wills, gifts, expiations, and alike, she may take actions in this regards for charitable deeds, subject to the maximum of one-third of her property. If the disposed amount exceeds one-third on grounds of her entitlement to dispose her property, this is a matter of disagreement between the narrators of Malik, as Ibn Al-Qassim says that if she exceeds one-third, all her act shall stand invalid and all what she has disposed, whether the one-third or what is more, shall stand invalid. Whereas Al-Mugheera and Ibn Al-Majishoon of the Maliki sect say that in this case, what she has disposed within the limit of one-third shall stand valid, and anything in excess of one-third shall stand as invalid.

Therefore, there is no disagreement between the jurists of Maliki Islamic sect on that she is only allowed to dispose what is more than one-third of her property with the permission of

her husband. **"Please see the authored work "(There Shall be Neither Harm Nor Malice), and the Jurisprudential Intentions and Applications Thereof in the Past and Present, Dr. Abdullah Al-Hilali – issued by the Department of Islamic Research – the Government of Dubai"**.

Even more, Ibn Ibrahim Al-Hilali narrated from Khalil and Ayyadh that she is not allowed to donate what is more than one-third of her property when she is married and of whatever inheritance she is expected to receive. **"Nawazel Ibn Hilal, page 159, a lithography"**.

Furthermore, the jurists of the Hanbali sect of Islam agreed with the jurists of the Maliki sect in banning the donation of what is more than one-third. Both sects rely on what was narrated by Omar Bin Shoaib from his father from his grandfather that the Messenger of Allah (Peace Be Upon Him) said in a speech: *"A woman may only donate from her property with the permission of her husband, as he is her guardian"*. Most jurists of the Hanafi and Shafiite sects of Islam, and many of the Hanbali sect in a narration or more, opine that *"if a women becomes an adult, her property is to be given to her, and she may dispose such property with or without consideration"*

Whereas those who follow the other opinion, being the followers of Dhahiri sect, as opined by Ibn Hazm Al-Dhaheri, opine that a wife is required to contribute to the expenses of the house of marriage if her husband is insolvent, on the basis of the saying of Almighty Allah: *(The duty of feeding and clothing nursing mothers in a seemly manner is upon the father of the child. No-one should be charged beyond his capacity. A mother should not be made to suffer because of her child, nor should he to whom the child is born (be made to suffer) because of his child. And on the (father's) heir is incumbent the like of that (which was incumbent on the father).* He opines that expense is payable by the husband and every inheritor whenever it is required therefrom, and the wife is an inheritor according to the statement of the Holy Quran and as such, she is bound to spend. This is evidenced from the Sunnah of the Prophet from what is narrated by Abdullah Ibn Omar that the Messenger of Allah (Peace Be Upon Him) said: *(A women may only donate with the permission of her husband).* This Hadith indicates that a woman may only dispose her property with the permission of her husband, even if she is an adult, a thing which indicates that a husband has an entitlement in the property of his wife by which she would share the expenses of the family with him. **("Al-Muhalla Bil-Aathaar", Part IX, page 254, and Part X, page 92)**

This opinion has been adopted by the proposed bill of the Algerian Law in Article 76, which stipulated that: *(In case the father is unable to spend, the children shall be spent on by the mother if she is capable of doing so).*

The same applies in Article 199, which stated as follows: *(If the father is fully or partly unable to spend on his children, while she is financially capable, she shall spend on the children in the amount by which the father is unable to spend).*

The Moroccan Family Code has adopted the rule that gives the husband and his wife the will to manage their earned properties in Article 49 thereof, by permitting the husband and his wife to agree on their investment, on a joint basis, in a contract that is independent from the marriage contract.

Whereas the Tunisian legislator expanded the principle of sharing earned properties, as it has dedicated a full law for the same, being the law related to the sharing system of properties by a husband and his wife in Chapter I thereof, as paragraph 2 of Article 37 expressly stated the adoption of the principle of sharing in the financial earnings of the husband and his wife, a thing which is agreed on when entering the marriage contract or in a subsequent official contract along with determining the percentages of entitlement, to be complied to by both spouses, along with the possibility to amend or cancel the same. All the properties earned during the matrimonial life are deemed to be jointly owned by both of them, whether such property is moveable or immoveable, with the exception of the properties earned by means of inheritance and donations. This is the stance that has been adopted by the Algerian and Moroccan legislators.

The Malaysian legislator has adopted the principle of the matrimonial sharing of wealth, as its jurisprudence has based this matter on unfounded interest, which is to be deemed from the Sharia evidences as opined by most jurists, especially the jurists of the Maliki sect. the deduction of interest has a strong relationship in the intentions of the Islamic Sharia for the preservation of the five necessities, being namely, religion, lineage, soul, mind, and property, and the division of joint property between a husband and his wife includes the preservation of the woman's property for her own good.

The scholars have defined unfounded interests as the interests that aim for the preservation of the intentions of the Islamic Sharia, including the protection of soul. There are three types of interests, being namely, considerable interests as evidenced by the Sharia-based evidenced, and revoked interests which are stipulated by the legislator to be inconsiderable or inconsistent with the provisions and directions thereof, and unfounded interest, for which no evidence is given by the legislator for considering them to be considerable or inconsiderable. The scholars have classified the joint property of the husband and his wife to be within the unfounded interests that lead, by the application thereof, to the accomplishment of interests for a woman, such as protecting her after separation from being lost and helping her to build a new life for herself for bringing up the children or managing the affairs of her life and the life of her family after being separated from her husband by divorce, or for fearing the injustice would happen to her after he has married another wife.

The objective of this is that the division of such property would serve her interest and not cause harm to both spouses. Based on this, the Malaysian Personal Affairs Law has relied to this evidence in evidencing the financial right of the women in what is called the joint property of both spouses and this has become a law in force and applicable at Malaysian courts, and it stated by Fatwa-givers that this is permissible in the Fatwa boards on the level of the state and the nation. They also deduced from the general meaning of the saying of Almighty Allah: (Unto men a fortune from that which they have earned, and unto women a fortune from that which they have earned) that it is permissible and legitimacy to divide the joint property between a husband and his wife and this was approved by the scholars and Fatwa-givers. This was approved by the Fatwa Board on the national level, as well as the Fatwa boards in the states, for the legitimacy of joint property between a husband and his wife and that it may be divided amongst them by the Sharia courts.

Furthermore, it is resolved in the provision of Articles (199 and 205) of the UAE Civil Transactions Law that every contract shall have a subject thereof, being the performance of which the debtor is obliged, and that the subject shall be governable by the contract. So, if the subject of the contract is in violation of the public order and morals, the contract shall stand invalid for its violation of the public order, a thing which shall be ruled by the court by itself, even if not insisted on by either opponent in a case. This indicates that no agreement may be made on what is in violation of the public order and morals.

In support of the above, the ruling of the Dubai Court of Cassation in Challenge No. 93 of 2008 (Personal Status) concluded that a woman's conditioning in her marriage contract to be entitled to share her husband's properties upon divorce involves no violation of the Islamic Sharia and the public order. In case No. 894/2007, personal status Muslims - Dubai Court of First Instance, one of the plaintiff's prayers was to order the defendant to fulfil the condition stipulated in the marriage contract, whereby she is entitled to receive half of her husband's property according to what she stipulated in their marriage contract in case he divorced her without her request or by virtue of a court's judgment due to his bad morals or failure to perform his duties. The Dubai Court of First Instance in that case ruled to dismiss her prayer on the basis of that it is not acceptable due to her ignorance since the plaintiff did not indicate the nature of such properties.

Such judgment was appealed by way of the appeal No. 205/2008 Personal Status. The Court of Appeal ruled that such a condition doesn't make a forbidden matter permissible and doesn't make a permissible matter forbidden, does not contradict the purpose or origin of contracting, and is not forbidden by Sharia. However, the court decided to reject this request on the basis that this condition includes obligating the husband to financial rights upon the occurrence of divorce. It is well established by Fiqh that the husband must accept this condition in order for it to be fulfilled and it is not sufficient to accept the marriage contract, but there is must be an explicit statement of acceptance of the condition.

The judgment was challenged by the cassation appeal No. 93/2008 personal status, whereby the Court of Cassation ruled to overturn the judgment in this regard, then awarded in favour of her the remedies she sought in the appeal, i.e. half of his properties. The court reasoned: (Whereas, the applicant sought to receive half of the respondent's property based on the fact that the two parties agreed on the same in the marriage contract in the event of the respondent divorces her. Whereas, it is stipulated under Article (20) of the Personal Status Law that each of the spouses may include such conditions as they may choose in writing in the marriage contract, except such conditions which make a forbidden matter permissible or make a permissible matter forbidden, which contradict the purpose or origin of contracting, or which are forbidden by Sharia. And what the appellant stipulated in her marriage contract dated 5-11-1987 with the number 3525 - according to the translation thereof which the appellant did not object to – is that "if the divorce occurs without her request or if the divorce did not result from a court ruling on the basis of bad morals of the wife or her failure to perform her duties, the husband must give half of his property that he had during the marital period without consideration or its equivalent according to the opinion of the court." And such a condition doesn't make a forbidden matter permissible and doesn't make a permissible matter forbidden, does not contradict the purpose or origin of contracting, and is not forbidden by Sharia. So, the respondent shall satisfy this condition in case the contents thereof materialises. Therefore,

the appellant deserves half of the respondent's property that he had during the marital period, as she stipulated on him in her marriage contract signed by him. Whereas, the case papers in this condition are not sufficient to form the court's conviction about the reality of what the respondent owns during the marital period before the date of the divorce on 19-11-2007, which the appellant deserves half of it, and the court holds in order to determine the reality of the case to appoint an expert to perform the assigned indicated in the operative part of this judgment). (Cassation Appeal No. 93 of 2008 Personal Status – Dubai Court of Cassation – hearing of 20.01.2009)

As the condition in the marriage contract for sharing is and has been accepted by the Cassation Court, if the Court now tried to prohibit the sharing principle, the Court itself would be contradicting this maxim.

Accordingly, and from all of the aforementioned, we conclude that as long as the Dubai Court of Cassation approves the agreement that the wife is entitled to receive half of the husband's wealth and property, then it follows that the sharing principle is not contrary to the provisions of the Islamic Sharia, nor to public order and morals. If it is so, the court would not have adopted the agreement on the same since it is not permissible to agree on what violates the provisions of Islamic Sharia (of conclusive evidencing and indication) which are related to public order. This means that the ruling of the English High Court which awarded 41.5% of marital wealth to TA doesn't involve a violation of the provisions of Islamic Sharia and public order, especially given the fact that FA before the English court and voluntarily submitted to its jurisdiction. The case continued before the English court considering it as a non-contested case, and he presented evidence that proves the amount of marital wealth and he did not object to the principle of sharing, but his defense focused only on the amount of the percentage that TA deserves. This proves that the award of the English court of 41.5% in favour of TA based on the principle of sharing of wealth is permissible according to Shariah law and there is no violation of the provisions of the Noble Sharia and public order. Nothing in all of the above constitutes any violation of a sharia-based provision of conclusive evidencing and indication. As such, the contested judgment erred in law, erroneously applied and misinterpreted the law in holding that the judgment issued by the English Court of Justice in case No. 5340FD13D0 violates sharia and therefore it shall be overturned and a new judgment shall be delivered that is to dismiss the appeals and to uphold the order under appeal.

3.  **Third Aspect**: It has been consistently held by your honourable court that the trial court, in disposing of the dispute between the parties, shall contain in its judgment what makes the reader thereof satisfied that the court has thoroughly examined the evidence and documents which have an impact on the case and whose significance have been asserted by the litigants. The court shall respond to the aspects of the essential defence presented before it by the litigants in such a way to show that the court has fully taken note of the real facts of the case. If the court overlooks such defence which might have an effect in changing the conclusion in the case - without seeking to address the validity thereof and to verify the validity of the litigant's requests – and rests its judgment on general statements that per se do not result in the outcome reached in the judgment - and do not serve as a response thereto, then its judgment shall be deemed to have employed a deficient reasoning and infringed the right of defence. (Cassation Appeal No. 320/2010 Commercial – Dubai Court of Cassation – Hearing 19.10.2010)

Article 62.1 of the UAE Personal Status Law provides for that a woman having reached the age of full capacity is free to dispose of her property and the husband may not, without her consent, dispose thereof; each one of them has independent financial assets. If one of the two participates with the other in the development of a property, building a dwelling place or the like, he may claim from the latter his share therein upon divorce or death. The text of the article expands to say that the law establishes the principle of marital sharing of wealth upon divorce or death, if one of them participates in the development of property. The phrase "participated in the development of property" is absolute phrase without restriction or specifying a specific aspect of the participation in "developing property". In this case: "The husband continued with the project, took up a rights issue and worked hard to make his Russian company a success. Production began in 2001 and his Russian company developed into a valuable producer of energy. At the same time as H was away travelling and building up his Russian company in Russia, W was 'keeping the home fires burning' in Surrey, running the home and caring for the boys, as well as H's daughter in earlier years, on her own in what was then a foreign country to her." Ibn Habib said in Al-Wadhah: The Prophet (peace be upon him) adjudicated between Ali Ibn Abi Talib and his wife Fatima, when they complained about the service to him. He ordered Fatima to carry out the hidden service (housekeeping). He ordered Ali to carry out the apparent service. Then, Ibn Habib said the inner service includes kneading, cooking, brushing, vacuuming the house, drawing water, and making the house. As for Ali, he was ordered to carry out the apparent service of working outside the home. Thus, the process of participation was clear in the ruling of the Messenger of God, (peace be upon him).

TA asserted before the Court of Appeal that the judgment which was issued by the High Court of Justice in the Case No. FD13D05340 awarded the awarded amount in her favour, declared here the owner of the vessel Luna, and ordered FA and SE to transfer the title to the vessel Luna into her name based on the same principle set out in the second sentence of Article 62 of the Personal Status Law, (the principle of participating in the development of marital assets). The judgment which was issued by the High Court of Justice expressly mentioned the following:

*50. For these reasons, on the evidence before me, I am satisfied and find as a fact that, notwithstanding the temporary hiatus described above, H and W's marriage lasted over 20 years from 1993 to October 2013 when W issued her petition; and the marriage only finally came to an end after a failed attempt at reconciliation, in late 2014.*

*54. W is now only seeking 41% of the assets instead of a 50:50 split, which gives some margin of appreciation (see further below).*

*55. In my judgment, the present case is a paradigm example of what Lord Nicholls was talking bout in White when he said at [989]: "If, in their different shares, each contributed equally to the family, then, in principle it matters not which of them earned the money and built up the assets"*

Based on the above, the judgment decided to award the awarded sum in favour of TA on the basis that the wealth was generated during, and not after, the subsisting marriage, and, that all the wealth that was generated during the marriage is matrimonial wealth and property. The judgment also took into account the wife's contribution to the development of the matrimonial

wealth by devoting herself to raising children and taking care of the marital home. This means that the principle of contributing or participating in the development of property is the same principle which the High Court of Justice has applied in the judgment sought to be enforced.

Whereas the contested judgment did not clarify the basis of its decision regarding how the wife's participation in the development of matrimonial property violates Islamic Sharia. This may not be impaired by what was mentioned in Article (62) of the Personal Status Law. The part mentioned in the contested judgment does not indicate that the judgment sought to be enforced violates Islamic Sharia. On the one hand, it covers the wife's money alone. On the other hand, the second sentence of the same Article demonstrates the sharia-complaint feature of what was awarded in the judgment issued by the High Court of Justice. The reliance of the aforementioned judgment on TA's participation in the development of marital property is the best proof of the sharia-complaint feature of what was awarded in the judgment issued by the High Court of Justice in London. As such, the contested judgment employed irrational and deficient reasoning and should be reversed based on this reason.

Based on all the above mentioned jurisprudential opinions and judicial judgments has been confirmed by the ruling of the Dubai Court of Cassation in Challenge No. 93 of 2008 (Personal Status) in that **a woman's conditioning in her marriage contract to be entitled to the half of her husband's properties upon divorce involves no violation of the Islamic Sharia and the public order**. The Cassation Court also ruled that **a matter for which there is no Sharia-based provision of conclusive evidencing and indication is not related to the public order and involves no violation of the Islamic Sharia within the framework of the jurisprudential opinion that is concluded by a diligent.**

Therefore, and based on all the foregoing, TA proven to your honorable court that it is well established in both Islamic Sharia and the ruling of the Dubai Court of Cassation that the principle of the sharing of wealth upon divorce is permitted in the Islamic Sharia and involves no violation of the provisions of the Noble Islamic Sharia, whether the principle of sharing is resolved by a law that is promulgated by the ruler for a public interest deemed by him or based on an agreement between both parties upon or after entering the contract. This is the opinion that has been adopted by some of our Arabian legislations, such as in Tunisia, Algeria, and Morocco, with the existence of some minor differences between such laws, while they do all, however, approve the principle of sharing in the manner set out in the English Law. Accordingly, the contested judgment violated the law, erroneously applied the law, employed irrational and deficient reasoning, which requires the reversal of the contested judgment and new judgment should be entered that the judgment issued by the High Court of Justice in the matter of the Case No. 5340FD13D0 and the subsequent orders do not violate the Sharia Law and public orders and morals.

4. **Fourth Aspect: Violation of the Law, employment of illogical reasoning, deficient reasoning and violation of what have been established by papers.**

The contested judgment rested was rested on Article 3 of the Civil Transactions Law which provides for that public order shall be deemed to include matters relating to personal status such as marriage, inheritance, and lineage…

The contested judgment is wrong in this regard. While the maintenance is a personal status matter, it doesn't concern the public order. The proof in support of this position is that the UAE personal status law itself permits the application of foreign law to matters related to the maintenance even if the provisions of foreign law are contrary to Islamic Sharia. Dubai Courts have applied the Indian Christian law regarding the maintenance of the divorced wife, as well as the Hindu law in the same regard. (Cassation Appeal No. 89/2014 personal status – Dubai Court of Cassation – hearing of 01/07/2014) and (Cassation Appeal No. 93/2014 personal status – Dubai Court of Cassation – hearing of 10/06/2014)

In any event, the maintenance is estimated taking into account the solvency of the payer, the condition of the recipient and the economic situation, which differs according to time and place. And that, as long as the judgment issued by the High Court of Justice was based on the principle of participation in the development of marital property, which is the same principle stipulated in Article (62) of the Personal Status Law, what was awarded in the ruling issued by the High Court of doesn't violate the Shariah Law. What was decided in the contested judgment that matters of maintenance concern the public order constitutes an erroneous application and misinterpretation of law. This requires the reversal of the contested judgment.

### (3) Third Ground: Employment of illogical reasoning, deficient reasoning, infringement of the right of defence, and violation of what have been established by papers

It has been consistently held by the honourable Dubai Court of Cassation that the trial court's judgment shall constitute illogical or deficient reasoning in case it rests its judgment on a fact deduced from non-existing source or an existing source but it is contrary to what it has proven or denied or in case its reasons involve a defect that impairs the accuracy of the deduction. This is achieved when it deduces a fact that does not lead to its conclusion without responding to a substantial defence raised by the litigant, so that if it had proved valid, it would have had an effect on the formation of the court's conviction and its conclusion, in order to show that it examined the reality of the case in a way that the Court of Cassation is unable review the same in this regard. (Cassation Appeal No. 51/2015, civil cassation appeal, Dubai Court of Cassation - hearing 14/1/2019)

Based on the foregoing, TA asserted before the Court of Appeal that the appeal is not permissible and is not admissible. The two orders under appeal were issued as an introductory step to enable TA to register an execution file and submit her application to enforce the foreign judgment before the competent execution judge to hear the same. The two orders under appeal, either the order of 29.04.2019 which was made by the chief justice of execution court whereby it was ordered to seal the Judgment FD13D05340 made by the High Court of Justice in London with the execution stamp; and the interim order of 17.07.2019 which was made in the matter of the Order-on-Petition No. 14/2019, Execution Stamp and which was registered in accordance with the instructions of the Chief Justice of the Court of Execution (which reads "we order to seal the Judgment FD13D05340 made by the High Court in London with the execution stamp.") are and introductory step to enable TA to register an execution file and submit her application to enforce the foreign judgment before the competent execution judge to dispose of the same. The two orders under appeal did not contain any judgment either to enforce or not enforce the judgment made by the High Court of Justice. The proof in support of this position is that TA registered the Enforcement File No. 4128/2019 Commercial Execution on 08.08.2019 by virtue of a statement

whereby TA sought from the execution judge to "enforce the Judgment made in the Case No. FD13D05340 made by the High Court in London with the execution stamp, to deliver the possession of and transfer the title in the yacht Luna to TA for the satisfaction of $487,278,000 (or AED 1,790,746,650), and to order FA and SE to pay the courts costs and attorneys' fees.

As such, the two orders issued to seal the judgment with the execution stamp in order to open the execution file are solely procedural orders. They did not contain any judgment either to enforce or not enforce the judgment sought to be enforced. They were issued as a procedural order after the Court of Cassation ruled on the finality of the judgment in relation to referring the application for enforcing the judgment made by the High Court of Justice as is to the competent execution judge.

The proof in support of the above is that the first decision made by the execution judge was made on 10.11.2019 whereby it was decided to effect the executory attachment of the yacht Luna, i.e. after the appeal nos. 6+10 order-on-petition execution stamp were filed.

The contested judgment dismissed such defence on the basis that the present appeal is permissible in accordance with Article 85.2 of the Regulations. It failed to take note that the two orders under appeal were issued in the file of order-on-petition, rather than in the execution file. They were not issued based on the judicial powers of the chief justice of the execution court, rather based on his ex parte powers. The decision made by the execution judge on 10.11.2019 is the sole decision issued in accordance with Article 85.2 of the Regulations to the Civil Procedures Law, which were not appealed by FA and SE.

There is a big difference between the decision made according to the ex parte power of the judge and the decision made according to his judicial power. On the date whereon the order in question was issued, TA has not yet submitted her statement. The chief justice of the execution court (who issued the first decision) or the judge, Abd Allah Al-Kaitoub, (who issued the second decision) by reviewing the statement of enforcing the foreign judgment which is required in accordance with Article 85 of the statement of execution. This is simply because TA hasn't yet submitted the same. This serves a proof that it is not permissible to appeal against the two orders - in relation to which the contested judgment was issued and that the appeal in relation thereof is not admissible.

The above position may not be impaired by the response set out in the contested judgment to these two defences that the appeal against the order is permissible in accordance with Article 85.2 of the Regulations. Such response doesn't grant the two orders issued by the chief justice of the execution court any judicial force. The contested judgment wrongly stated that the execution judge has the subject-matter jurisdiction to affix the execution stamp. The contested judgment failed to take note of the reality which is the file of the order-on-petition No. 14/2019 (order-on-petition execution stamp) is a file opened by the court itself (as a pure introductory procedural step) and TA did not file such file. If the court of appeal had reviewed the file of the order-on-petition No. 14/2019 (execution stamp), it would have discovered the accuracy of TA's defence that the two orders under appeal were issued under the ex parte powers of the chief justice of the execution court, rather than his judicial powers. The said two orders do not contain any judgment in order for them to be subject to appeal in accordance with Article 85.2 of the Civil Procedures Law. As such, the contested judgment infringed the right of defence and violated what have been established by papers. Accordingly, the contested judgment should be reversed.

**Fourth:  Staying the execution of the contested judgment.**

Whereas on 10.02.2020 both SE and FA approached the execution judge to cancel the executory attachment order and to release the Yacht, and on the same date the execution judge decided to revoke all the execution proceedings and to release the yacht. Whereas the departure of the Yacht will cause the loss of the rights of TA, and it is impossible afterwards to reinstate the situation to what it was on prior to her departure. TA was constantly suffering as from 2016 from pursing FA and ES for the sake of executing the judgement entered against them. It is well evidenced by the same judgment, sought to be enforced, that the FA constantly used to evade the enforcement of the judgement issued against him by the High Court of Justice. FA has taken elaborate and contumacious steps to evade the enforcement of the Judgment debt against him as to the yacht Luna.

According to the Enforcement of Foreign Judgments Guidebook, issued by Abu Dhabi Judicial Department, First Edition 2012, to ensure justice, there is a need to guarantee the recognition of enforcing foreign judgments. Undoubtedly, enforcing foreign judgments is a necessity in order to assure creditors. This will increase the credit movement in the community. Saying that the foreign judgement may not to be the basis of effecting an attachment will oblige relevant persons to file the relevant case in every country wherein they want to assert their right. This entails the loss of time and effort and increases the costs of litigation. This may also create a conflict of judgements. The above situation would disturb the international transactions in terms of facilitation and required stability. As such, the (bad faith) judgement debtor can evade the enforcement of the judgments against him by moving from one country to another. It is not unclear to your honourable court that this will entail the denial of justice. In addition, the international law allows the repatriation of criminals fleeing justice if they resort to another State. It is not fair to deprive the judgement creditor of the right to pursue the judgement debtor in the State in which he fled or concealed his assets, particularly if the judgement sought to enforced is fair, final and conclusive and is based on sound procedures. In light of the above considerations, there is a need to recognize foreign judicial judgments, as many advantages are achieved. On one hand, the recognition of a foreign judgment ensures that time is not wasted in settling previously settled disputes. On a second hand, it would also save the litigation costs which will be spent in case of not allowing the enforcement of foreign judgements. On a third hand, such recognition would prevent a conflict between the judgment issued in a foreign state and such judgement which would be required in the State of enforcement. Recognition of foreign judgments would also strengthen the credit situation at the national and international levels alike. It will also achieve justice at the international level, so as the judgement creditor may not suffer any harm merely because the judgement debtor escapes to another country. (Enforcement of Foreign Judgments Guidebook, issued by Abu Dhabi Judicial Department, First Edition 2012)

Having regard to the above, and whereas the execution of the contested judgment before deciding on the present cassation appeal will cause irreparable gross damages to TA in case your honourable court decided to reverse the judgement under cassation. Such damages are the fact that it will impossible to reinstate the same situation again, rather than sustaining damages in case the same situation is reinstated.

Furthermore, the reality of the case shows that it is more likely that the cassation appeal will prevail and the contested judgment will be reversed and cancelled due to the apparent violation of the

provisions of the law and the documentary evidences as well the rules established by your honourable court as well as Sharia provisions. And to avoid the damage to TA, we respectfully request your honourable court to urgently stay the execution of the contested judgment pending the determination of the cassation appeal in pursuance of article 175 of the Federal Civil Procedures law.

**Therefore,**

TA respectfully request your honourable Court the following:

1) To allow the cassation appeal as to its form;
2) Urgently and before deciding on the merits of the cassation appeal, to stay the execution of the contested judgment until the disposal of the cassation appeal.
3) Originally: To reverse the contested judgment – and to deal with the merits of the cassation appeal – and to deliver a judgement in the matter of the Appeals No. 6/2019 and 10/2019 that is not to accept the appeal as to its form for being filed out of time.
4) In the alternative, to reverse the contested judgment and remand the papers to the court of appeal to dispose of the same by a different bench of judges and to order FA and SE to pay the court costs and attorneys' fees.
5) To order FA and SE to pay the court costs and attorneys' fees.