**EXHIBIT 10**

| | |
|---|---|
| **From:** | Temur Akhmedov |
| **To:** | Ross Henderson |
| **Subject:** | Fwd: Legally Privileged.Strictly Private & Confidential . |
| **Date:** | 14 July 2015 18:50:36 |

Best,
Temur Akhmedov

Begin forwarded message:

> **From:** Andy Kerman <andy.kerman@kermanco.com>
> **Date:** 14 July 2015 18:58:10 CEST
> **To:** "Temur Akhmedov (khyshen@gmail.com)" <khyshen@gmail.com>
> **Cc:** Sebastian Devlin <sebastian.devlin@kermanco.com>
> **Subject: Legally Privileged.Strictly Private & Confidential .**
>
> Dear Temur,
>
> Has your Father received any further clarification of what your Mother meant in her text message , which you asked me about yesterday?
>
> Your Father has made it very clear that he is unwilling to give your Mother the sort of capital sum that she is looking for and which the English courts would award her. However if there is a chance of settling with your Mother on the basis of a modest amount of capital and a large yearly income that would be a solution which your Father should consider very carefully. It goes without saying that if a deal was done between your parents then the need for your Father to give up a 25 year relationship with UBS would disappear overnight and there would be nothing to stop him going ahead with Mallar if he chose to do so.  Up until now no such proposal appears to be on the table, which is why we have been attempting to safeguard all his assets by placing them in jurisdictions where it would be hard if not impossible for your Mother to enforce any English court order that she might obtain.
>
> All the banks that we have been looking at appear to be good options in theory because they are located in UAE and Qatar where English judgments are not enforced as of right . Reed Smith advise that if your Father holds a residence visa for the UAE and is a Moslem any attempts to enforce an English financial order on divorce would be dealt with in accordance with local law, which would not be favourable to your Mother.
>
> However if your Mother sees through the English court process to the end, there is absolutely no doubt that she **will** obtain a massive order (it could well be GBP 350 million) and she may well think that it is worth spending a lot of money in order to try to enforce that massive order – particularly as your Father has valuable assets which are **not** locked away in jurisdictions where your Mother cannot get at them .

In short it is likely that your Father will be under constant attack until your Mother runs out of money, which (unless she is prepared to mortgage Somerton) will happen very quickly once your Father stops funding your Mother's lavish lifestyle .

The husbands who have been successful at resisting the enforcement of English financial orders on divorce have shipped **all their assets** off to jurisdictions sympathetic to them and kept a low profile, which is just not in your Father's nature !  In your Father's case we have the continuing problem of Luna, the aircraft and the Sotheby's purchases , the combined value of which must be in excess of USD 500 million.

As you know the best protection for these assets that we have been able to come up with in all the circumstances  is that they be charged to an offshore bank.  However,  quite apart from the  risks and uncertainties which are always present in any  litigation, the success of this operation is absolutely dependent on whether the bank your Father chooses cooperates with him and  actively defends (at your Father's expense)   its  charges over the assets on the basis that the bank has  a security interest in them. It is therefore essential that whatever bank is used understands that this is what it will have to do and will not get "wobbly" at the last minute if an attack is made.

Right from the start Mirabaud have engaged very seriously with the problems of charging the assets and have put forward their terms for providing this facility, as part of the overall package. Significantly they have said that the way your Father's account would be held would mean that they would be **prohibited** under Swiss law from disclosing any information to the English court, even if your Mother were able to obtain a Swiss court order.

So far as I am aware neither CBQ nor  Emirates NBD has given any indication that they would do what is required if faced with  an attempt to enforce a court order,  or produced any  draft documentation that they would use for the charges, or made  any proposals on fees / interest rates – so you will need to raise this with the Emirates NBD people tomorrow . Mirabaud will no doubt respond to you direct on your emails today but unless / until we have clear proposals from CBQ and Emirates NBD it is impossible to compare the three banks like for like. Incidentally Mirabaud are under the impression  that   UBS's execution charge is   2.5bps -  as opposed to 5 bps  which is what  I  had understood   it to be.

The pictures do fall into a special category. While they can in principle be charged, it would be infinitely safer to have them physically stored in a place where they cannot be touched. Normally when pictures are charged the lender takes physical custody of them as well as taking a pledge. If your Mother cannot physically get at the pictures there is little that she can do about them. Short of that there will always be exposure to a greater or lesser degree. This is why I have been keen for the pictures to be sent to somewhere

like Baku. Sending the pictures to Luna is not an ideal solution because Luna will call at various ports, where attempts could be made to grab the pictures , and what happens then will depend on the relevant local law. In our view sending them to be reframed now would also create an unnecessary additional exposure.

Best,

Andy

**Anthony D Kerman**
**Kerman & Co LLP**
**200 Strand**
**London WC2R 1DJ**

Tel:	+44 (0) 20 7539 7272
Fax	+44 (0) 20 7240 6143
Website: www.kermanco.com

Alliuris Group
Member of ALLIURIS A.S.B.L.
Alliance of International Business Lawyers

BRUSSELS · PARIS · LONDON · AMSTERDAM · AMERSFOORT · LYON · MADRID · BARCELONA
LISBON · MILAN · EDINBURGH · GLASGOW · DUBLIN · COPENHAGEN · HANOVER · ZUG · VIENNA
MOSCOW · MINSK · POZNAN · WARSAW · BUCHAREST · SOFIA · ATHENS · ISTANBUL
NEW DELHI · BEIJING · SHANGHAI · SAO PAULO · RIO DE JANEIRO · BRASILIA
--------- IMPORTANT DISCLAIMER ---------
The information in this message is confidential and may be legally privileged. It is intended solely for the addressee. Access to this message by another person is not permitted. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful.
The contents of an attachment to this e-mail may contain software viruses which could damage your own computer system. While Kerman & Co LLP have taken every reasonable precaution to minimise this risk, we cannot accept liability for any damage which you sustain as a result of software viruses. You should carry out your own virus checks before opening the attachment.
Kerman & Co LLP is a limited liability partnership registered in England and Wales under Companies House No OC303233
Authorised and regulated by the Solicitors Regulation Authority - SRA No. 382661.
Registered office and principal place of business: 200 Strand, London WC2R 1DJ