UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE APPLICATION OF
TATIANA AKHMEDOVA,

    Applicant,

REQUEST FOR DISCOVERY PURSUANT
TO 28 U.S.C. § 1782

_____/

CASE No.

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION
FOR AN ORDER GRANTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

    Applicant, Tatiana Akhmedova, ("Ms. Akhmedova" or "Applicant"), by and through her undersigned counsel, Holland & Knight LLP, and for her memorandum of law in support of an application for discovery pursuant to 28 U.S.C. § 1782, states as follows:

**PRELIMINARY STATEMENT**

    This Memorandum is offered in support of Ms. Akhmedova's 1782 Application seeking discovery with respect to documents located in the United States and in this Judicial District for use in the following foreign proceedings:

(i)     the pending litigation in Dubai wherein Farkhad Akhmedov (Applicant's ex-husband) is seeking to determine his and Applicant's divorce anew according to Sharia law, the basis of which is Mr. Akhmedov's purported personal status as an UAE resident;

(ii)     the pending litigation in Dubai between Applicant and Farkhad Akhmedov and Straight Establishment (defined below), to recognize and enforce an English money judgment, which is currently under consideration of the Dubai Cassation (Appeal) Court.

As set forth in the Application and the Declaration of Alessandro Tricoli dated August 10, 2020 ("Tricoli Decl."), in support thereof, this dispute originally arises out of two English Money Judgments which Applicant is seeking to enforce against her ex-husband and various alter ego entities which he has used to fraudulently transfer and conceal assets to avoid payment to Applicant.  On December 15, 2016, following an eight-day financial remedy hearing between Applicant and ex-husband Farkhad to establish the value of the couple's assets and to decide how to divide that value in a final distribution, the English Court awarded Ms. Akhmedova a cash award of GBP £350,000,000 (approximately US $466.6 million) (the "Cash Award").

The English Court has also declared that Applicant is the legal and beneficial owner of the Vessel (defined below), and ordered Farkhad and Straight Establishment (the Vessel's registered-owner and alter ego of Farkhad) to transfer title to Ms. Akhmedova within seven days.  The English Court ordered that if the title transfer was not effected within seven days, Straight Establishment would be liable to Ms. Akhmedova for a liquidated cash sum of $487,278,000 (the "Straight Money Judgment").  The English Court also extended a Freezing Order to apply to Straight Establishment and specifically applied to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel.

Following the issuance of the English Judgments as well as the Freezing Order directed at Farkhad with respect to the Vessel, Applicant has filed various foreign proceedings in her efforts to obtain recognition and enforcement of the English Judgments, including the two Dubai actions noted above.  Under the circumstances, the following categories of evidence will be relevant, important and useful for Applicant to obtain for use in the foreign proceedings, all of which evidence is located in the United States:

(a) documents in the possession or control of Humaid Abdulla Mohammed al Masaood al Muhairbi ("Al Masaood") concerning efforts made by himself personally or using Humasen Energy to obtain a United Arab Emirates (UAE) residency visa for Farkhad Akhmedov from 2014 to present, including but not limited to:

  (i) any communications between Masaood, Humasen Energy or their representatives and Farkhad Akhmedov or his agents or representatives, or any third parties;

  (ii) any communications between Al Masaood, Humasen Energy or their representatives and the UAE General Directorate of Residency and Foreigners Affairs or the Federal Authority for Identity and Citizenship regarding Farkhad Akhmedov;

(b) all documents and communications related to "Project Maldives";[1]

(c) documents in the possession or control of Humaid al Masaood concerning funds received from Y.Co NY Inc., the yacht manager for Farkhad Akhmedov's yacht the M/Y LUNA, including but not limited to those received in 2018.

Ms. Akhmedova's application seeking discovery in aid of the foreign proceedings satisfies all of the requirements of § 1782 and the Supreme Court's discretionary factors. Under 28 U.S.C. § 1782, an applicant may be granted discovery in the United States in aid of a pending foreign proceeding if the applicant is an interested party to the proceeding and if the information sought is located within the district.

---

[1] As described in the declaration of Alessandro Tricoli filed in support of this Application, "Project Maldives" was the name given by Farkhad's Akhmedov's Dubai counsel to the efforts undertaken to hide Farkhad's assets in the UAE, including using Al Masaood's Dubai company to obtain a UAE residence visa in Farkhad's name.

It is clear that discovery concerning U.S.-located Al Masaood's actions taken in connection with the UAE residence visa is directly relevant to Mr. Akhmedov's personal status as a UAE resident and crucial to Applicant in order for her to defend Farkhad's efforts to re-litigate the divorce and division of assets pursuant to Sharia law in the UAE.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to Title 28 United States Code Section 1782 as this Application is for discovery involving documents located within the Middle District of Florida, discovery necessary to assist Applicant in the foreign court proceedings. At all times material herein, Applicant is and was a resident of England and British citizen. Venue in the Middle District of Florida is appropriate pursuant to Title 28 United States Code Section 1782 because the discovery is being sought from Al Masaood, who is a resident of and present within this Judicial District, along with the documents presently located in this jurisdiction in Al Masaood's possession or control.

## FACTUAL BACKGROUND

The facts giving rise to this Application are set forth in detail in the Tricoli Declaration, as well as the exhibits thereto. According to the declaration, the dispute and pending foreign litigations can be briefly summarized as follows:

**I.     THE ENGLISH MONEY JUDGMENTS AND THE DEBTORS' FRAUDULENT TRANSFER OF ASSETS**

Applicant has obtained two English money judgments rendered by the Family Division of the High Court of Justice in London (the "English Court") in favor of the Applicant. One against Farkhad Teimur Ogly Akhmedov ("Farkhad"), Cotor Investment, S.A. ("Cotor"), Qubo 1 Establishment ("Qubo 1"), Qubo 2 Establishment ("Qubo 2"), Straight Establishment ("Straight Establishment"), and Avenger Assets Corporation ("Avenger Assets"), jointly and severally, in

the amount of GBP £125,569,492 plus interest and certain running adjustments (the "Initial Money Judgment"); and the second against Straight Establishment in the Straight Money Judgment amount of $478,278,000. The English Judgments were awarded following an eight-day Financial Remedy Hearing conducted in the Family Division of the English High Court in connection with the divorce of Applicant Ms. Akhmedova and Farkhad Akhmedov.

Applicant issued a divorce petition in London on October 24, 2013. Ms. Akhmedova was granted a *decree nisi*, stating that the English Court saw no reason why the couple could not divorce, on December 2, 2015. The *decree nisi* was made absolute on December 15, 2016. Thereafter, an eight-day financial remedy hearing was heard in the Family Division of the English High Court in November and December 2016. The purpose of the Financial Remedy Hearing was to establish the value of the couple's assets and to decide how to divide that value in a final distribution.

However, on November 30, 2016 (the second day of the trial in England) a luxury yacht, the M/Y LUNA, beneficially owned by Farkhad via corporate shell and registered in the Marshall Islands with Certificate of Registry No. 5817-PY (the "Vessel"), was transferred from its corporate owner, Avenger Assets, to another entity, Stern Management Corporation at the instruction of Farkhad. One day later, on December 1, 2016, the Vessel was again transferred at the instruction of Farkhad from Stern Management Corporation to Qubo 2. Later, Qubo 2 was found by the English Court to be the alter ego of Farkhad. Y. CO. and its principals, owners and top managers were materially involved in facilitating the transfer of the Vessel to Stern Management Corp., to Qubo 2, and subsequently through Straight Establishment through the grant of Special Power of Attorney.

At the conclusion of the Financial Remedy Hearing on December 15, 2016, the English Court awarded Ms. Akhmedova the Cash Award. Farkhad was ordered by the English Court to pay the Cash Award by January 6, 2017. On December 20, 2016 the English Court issued a freezing order (the "Freezing Order") preventing Farkhad and the other judgment debtors from dealing with his assets (whether in or outside England and Wales), and ordering him to make financial disclosure of his assets.

On December 20, 2016 the English Court also found that transfers of a 1) modern art collection and 2) the assets of Cotor,[2] to entities in Liechtenstein, including Qubo 1 and Qubo 2 "was simply the latest part of [Farkhad's] attempts to avoid his liabilities by purporting to transfer his assets to a new jurisdiction and thereby making enforcement more difficult." Tricoli Decl. ¶ 10. The English Court set aside these transfers on the basis that Qubo 1 and Qubo 2 "are no more than ciphers and the alter ego of [Farkhad]" (*Id.*) and made the Qubo entities liable for the judgment debt together with Farkhad. Tricoli Ex. 2 ¶¶ 11(g)-(h), 12

Farkhad has not satisfied any portion of the Cash Award, including the Initial Money Judgment, and is currently in contempt of Court for breaching the terms of the Freezing Order. He has instead continued to engage in a pattern of deception aimed at concealing his assets and frustrating Ms. Akhmedova in her efforts to enforce her rights as a UK judgment creditor.

On March 8, 2017 (while the Vessel and Farkhad were located within the Southern District of Florida), in disregard of the English Judgment (under which Qubo 2 was liable on the judgment debt together with Farkhad), and the English Freezing Order, Qubo 2 transferred the Vessel to Straight Establishment. On March 21, 2018, the English Court issued an order against Defendants Straight Establishment and Avenger Assets (the "March 21 Order"). The English Court found that

---

[2] In 2012, Farkhad sold his interest in ZAO Northgas, a Russian oil company, for US $1.375 billion. Following the sale, Farkhad transferred the sale proceeds to Cotor. Tricoli Ex. 1 ¶ 77.

6

Straight Establishment was an alter ego of Farkhad and served as his nominee. The English Court found that assets held and previously held in Straight Establishment's name, as well as assets held and previously held in Avenger Asset's name, beneficially belonged to Farkhad, including the Vessel which had been fraudulently transferred by Farkhad several times during the English proceedings.

Also on March 21, 2018, the English Court declared "with immediate effect that Applicant is the legal and beneficial owner of the Vessel," and ordered Farkhad and Straight Establishment to transfer title to Ms. Akhmedova within seven days. The English Court ordered that if the title transfer was not effected within seven days, Straight Establishment would be liable to Ms. Akhmedova for the liquidated cash sum of the Straight Money Judgment. The English Court also extended the Freezing Order to apply to Straight Establishment and Avenger Assets, and specifically applied to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel.

## II.     THE DUBAI PROCEEDINGS

### A.     The Dubai Judgment Enforcement Proceeding

Following the issuance of the English Judgments as well as the Freezing Order directed at Farkhad with respect to the Vessel, on February 7, 2018 Applicant filed an application in the Dubai International Financial Centre ("DIFC") Courts against Farkhad and Straight Establishment (the owning entity of the Vessel), for recognition of the English Judgment. At the time of the DIFC application, the Vessel was in Port Rashid, Dubai, where it currently remains subject to a preliminary injunction issued out of the Republic of the Marshall Islands.[3]

---

[3] James Power, Esq., who is admitted in the Republic of the Marshall Islands, is counsel for applicant Tatiana Akhmedova in pending actions before the High Court of the Republic of the Marshall Islands.

7

While Straight Establishment acknowledged the proceedings contesting the jurisdiction of the DIFC courts, Farkhad did not appear before the DIFC courts and instead commenced separate proceedings before the Dubai courts leading, on May 6, 2018, to an application to the Dubai Joint Judicial Committee to decide on the conflicting jurisdiction created by virtue of the separate proceedings commenced by Farkhad.  On July 11, 2018, the Committee held that the case should be heard in the local Dubai courts notwithstanding that the proceedings before the DIFC court were by then at appeal stage.

The Dubai Court of First Instance issued a decision on November 12, 2018, in which it declined to recognize the English orders and judgments on the basis that the English Judgments did not appear to be final and conclusive based on the lack of a seal on the documents.  On November 22, 2018, Mrs. Akhmedova filed an appeal against this decision.

On March 27, 2019, the Court of Appeal (Commercial Appeal No. 2646/2018) delivered a judgment, reversing the CFI judgment on the basis that sufficient proof that the English judgments are final and conclusive final has been given, and sending the file back to the execution judge at the Court of First Instance as the competent judge to hear the case (due to a recent change in the procedural rules).  Accordingly, on April 29, 2019, the chief justice of the Dubai Court issued his first "original" order to append the execution stamp on the judgment issued by the High Court of Justice in London in the case.  On July 17, 2019 a further interim order was issued directing the sealing of the English Judgment with the execution stamp.

Based on the above, Ms. Akhmedova registered the Execution No. 4128/2019 Commercial Execution on August 8, 2019 by a statement whereby she sought from the execution judge to "enforce the Judgment made in the Case No. FD13D05340 made by the High Court in London with the execution stamp, to deliver the possession of and transfer the title in the yacht Luna to

Ms. Akhmedova for the satisfaction of $487,278,000 (or AED 1,790,746,650), and to order Farkhad and Straight Establishment to pay the courts costs and attorneys' fees." The enforcement application remained before the execution judge at Dubai Courts and no decision was made. On October 31, 2019, Ms. Akhmedova applied to effect the executory attachment of the vessel Luna. On November 11, 2019, the execution judge granted her application to effect the executory attachment of the vessel Luna.

On July 30, 2019, Straight Establishment and Farkhad each filed appeals seeking to reverse the two orders dated April 29, 2019 and July 17, 2019 whereby it was ordered to seal the English Judgment made by the High Court in London with the execution stamp. The Dubai Court of Appeal decided to join the two appeals in order for one judgment to be entered. On February 5, 2020, the Dubai Court of Appeal ruled to "grant the two Appeals as to their form. Second: As to the merits of the two Appeals, to overturn the order under appeal which was issued in the matter of the Order-on-Petition No. 14/2019 Execution Stamp, and to deliver a new judgment that is to dismiss the application made to seal the foreign judgment and the ancillary orders thereof – which were issued by the High Court of Justice in London under the number FD13D05340 – with execution stamp. The Court orders the First Respondent in the matter of the two Appeals to pay the costs of the two appeals and AED 2,000 of attorneys' fees."

The Court of Appeal rested its judgment which reversed enforcement and execution of the English Judgments on the reasoning that the sharing principle applicable in English Law (i.e., the division of marital assets ordered by the English Court) violates the Sharia Law and as a result contrary to the public orders and morals of the Dubai courts. Ms. Akhmedova has appealed this ruling to the Dubai Court of Cassation. Her most recent filing was made on April 2, 2020. Both Farkhad and Straight Establishment provided submissions to the Dubai Court of Cassation in

relation to Ms. Akhmedova's appeal, and following a brief oral hearing on July 20, 2020, a decision by the Dubai Court of Cassation is expected on August 13, 2020.

### B.    The Dubai Personal Status Claim

On or about February 23, 2020 Farkhad filed a new action before the court of personal status in Dubai seeking a confirmation of divorce, in which he claimed that he and Ms. Akhmedova had entered into a Sharia marriage contract at the time of their marriage in 1993. Central to Farkhad's application to establish that the marriage was established under Sharia law and that a divorce and distribution of assets is proper under Sharia law is establishing his residence in Dubai.[4]

Certain documents obtained during discovery in the English Proceedings from Farkhad's son Temur, who is closely involved with Farkhad's evasion of the English Judgments, reveal a scheme to establish residency in Dubai. As set forth in the Tricoli Declaration, and attached as exhibits thereto, the correspondence reveals a scheme dating back to 2014 wherein Farkhad sought to fraudulently establish residence in the UAE as part of a scheme to hide assets from Applicant and to evade enforcement of Applicant's judgments against him.

It is clear from the correspondence obtained that Al Masaood was individually involved in obtaining the UAE residence visa for Farkhad which substantially aided and abetted Farkhad's efforts to hide assets in the UAE during the English divorce proceedings. Further, this residence is being used to further Farkhad's recently-filed application to re-establish the couple's divorce in the Dubai courts under Sharia law.

---

[4] Farkhad is looking to use Sharia law, which limits the rights of women in divorce cases, to frustrate Applicant's rights under the otherwise valid English divorce decree and subsequent financial remedy proceeding wherein the marital estate was apportioned by the English Court. Farkhad is looking to establish residency post-English judgment in the UAE for the sole purpose of seeking to use Sharia law to deny Applicant the distribution of estate proceeds previously ordered by the English Court.

Finally, information received through discovery requested in other actions reflects that Al Masaood received funds in late 2018 and into 2019 from an entity called Y.Co NY Inc., a company affiliated with the yacht managers of Farkhad's superyacht located in Dubai, the M/Y LUNA. It is believed these payments may be related to recent actions taken by Farkhad in connection with his UAE residency.

## ARGUMENT

### I. 28 U.S.C. § 1782 PROVIDES FOR DISCOVERY IN AID OF PENDING FOREIGN PROCEEDINGS

The basis for this *ex parte* Application is 28 U.S.C. § 1782. "First, it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012).

Section 1782 authorizes a United States District Court, upon the application of an interested person, to order a person residing in the district to give testimony or produce documents for use in a foreign proceeding:

> The District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a); *see also In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

Whether to grant this Application for discovery pursuant to 28 U.S.C. § 1782 is within this Court's discretion. *In re Clerici*, 481 F.3d at 1331 ("Because Congress has given the district courts such broad discretion in granting judicial assistance to foreign countries, this court may overturn

the district court's decision only for abuse of discretion") (internal citations omitted); *In re Application of Aldunate*, 3 F.3d 54, 62 (2d Cir. 1993), *cert. denied*, 510 U.S. 965 (1993).

## II.   MS. AKHMEDOVA SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

The United States Supreme Court has interpreted Section 1782 as having a broad application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004). In determining that Section 1782 authorizes a federal district court to provide discovery assistance, the Supreme Court specifically rejected the multiple limitations that *Intel* attempted to inject into the interpretation of the statute. *Intel*, 542 U.S. at 256. Instead, the Supreme Court adopted a broad and liberal interpretation of the statute and provided guidelines for the future application of the statute by federal district courts. *Id.*

Ms. Akhmedova satisfies each of the requirements of 28 U.S.C. § 1782 and those set forth by the Second Circuit in *Aldunate*. *Id.* In *Aldunate*, the Second Circuit stated of Section 1782 that:

> [T]he statutory language is unambiguous in its requirements: (1) the person from whom discovery is sought must reside in or be found in the district of the district court to which the application is made, (2) the discovery must be "for use in a proceeding in a foreign or international tribunal," and (3) the application must be made "by a foreign or international tribunal" or by "any interested person."

3 F.3d at 58 (quoting 28 U.S.C. §1782).

Thus, this Court may enter an order allowing discovery for use in the foreign proceedings. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014). Specifically, Ms. Akhmedova is an interested person to the foreign proceedings; the person with possession, custody and/or control of the discovery sought resides in or is found within this District; and the evidence is sought for use in the pending foreign proceedings, which are before foreign tribunals in Dubai, UAE.

12

### A. Ms. Akhmedova, the Applicant, is an interested person to the foreign proceedings

Ms. Akhmedova, as a judgment creditor of Farkhad and his alter egos, is the petitioner in the foreign proceedings. Accordingly, she is clearly an "interested person" as that term is used in 28 U.S.C. § 1782. *See In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992), *cert. denied*, 506 U.S. 861 (1992).

The court's decision in *Intel* highlights the broad applicability of this standard. The Supreme Court recognized the definition of an interested party to be any person who "possess[es] a reasonable interest in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256. *In re Req. for Assistance from Ministry of Legal Affairs of Trin. & Tobago*, 648 F. Supp. 464, 466 (S.D. Fla. 1986) ("An application may be made by any interested person. The legislative history supports this view"), *aff'd*, 848 F.2d 1151 (11th Cir. 1988), *abrogated in part on other grounds by Intel*, 542 U.S. 241 (2004). Here, Ms. Akhmedova has already commenced the Dubai recognition action to recover on the English Money Judgments, and is engaged in continued litigation to prevent Farkhad's efforts to use the UAE court from re-litigating the divorce and division of assets pursuant to Sharia law, on the basis of a fraudulently obtained UAE residence visa. The English Court has ruled that she is entitled to a division of assets under English law, the place of residence of the couple during their 20-year marriage. As such, Ms. Akhmedova clearly possesses a reasonable interest in obtaining the assistance requested.

### B. The person with possession, custody and/or control of the discovery sought resides in or is found within this District

In addition, the discovery subject, Al Masaood "resides" in this Judicial District. Ms. Akhmedova seeks the deposition of and production of documents by Al Masaood by service at his residence at 51 Martinique Avenue, Tampa, Florida. Al Masaood has access and control over all records, communications of himself individually and as sole shareholder of Humasen Energy,

13

through which he arranged to sponsor Mr. Akhmedov's UAE residence visa. *See* Tricoli Decl. at ¶¶ 37-42. This satisfies the statutory requirements of 28 U.S.C. § 1782. Ms. Akhmedova anticipates serving Al Masaood with subpoena for deposition and the production of documents in this District upon the issuance of an order by the Court authorizing the discovery assistance requested.

### C. Discovery is sought for use in the pending foreign Actions, which are being held before one or more foreign tribunals in Dubai

Ms. Akhmedova seeks discovery "for use in a proceeding in a foreign or international tribunal." *Aldunate*, 3 F.3d at 58 (quoting 28 U.S.C. §1782). As the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), explained, the proceeding for which discovery is sought under §1782(a) may be within reasonable contemplation, pending or imminent. *Id* at 243.

*See Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) ("Section 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the opposite, Section 1782 expressly provides that the district court should grant discovery under the Federal Rules of Civil Procedure… The Magistrate Judge did not err by granting discovery 'for context,' when such discovery is allowed under Rule 26(b)(1)"), *cert. denied*, 130 S.Ct. 59 (2009). As Alessandro Tricoli, Dubai counsel to Ms. Akhmedova, explains in his accompanying declaration, Ms. Akhmedova is in need of the requested discovery to determine the actions taken by Farkhad and those on his behalf to fraudulently establish the residential requirements necessary for proceeding in Dubai under Sharia law, thus preventing Applicant from recognizing and enforcing her foreign money judgments there against the Vessel.

In *Intel*, the Supreme Court confirmed a low threshold for satisfying the "foreign or international tribunal" requirement by concluding that the Directorate General (i.e., a

governmental investigative body and not a court) is a "tribunal" for the purposes of satisfying the requirements of § 1782. The Court also stated that "[t]he term 'tribunal'… includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Intel*, 542 U.S. at 248. In light of the expansive definition of the term "tribunal," the Dubai Court proceedings clearly constitute "proceedings in a foreign or international tribunal."

### D.     No Other Factors Weigh Against Allowing Discovery

In addition to satisfying the requirements of *Aldunate*, 3 F.3d at 58, there are no factors which would argue against allowing the discovery. In *Malev*, the Second Circuit emphasized that the goals of Section 1782 should be considered in deciding motions brought under the statute. *Malev*, 964 F.2d at 100. These goals of Section 1782 are:

> [T]win aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign courts by example to provide similar means of assistance to our courts.

*Id.* Both these aims will be fulfilled by granting the requested discovery. The discovery sought will assist Ms. Akhmedova in the Dubai actions. According to her Dubai counsel, Mr. Tricoli, "there is no rule of UAE/Dubai evidence that would prevent discovery obtained under 28 U.S.C. § 1782 being used in the Dubai proceedings." Tricoli Decl. ¶ 48.

Thus, the goals of the statute will be accomplished through granting this application. Given the holdings in *Aldunate* and *Malev*, it must be concluded that a Section 1782 application should be granted where, as here, an applicant has met the express requirements of the statute and where the discovery will achieve the goals set by the statute's enactment. *Aldunate*, 3 F.3d at 58; *Malev*, 964 F.2d at 100.

**III.     MS. AKHMEDOVA ALSO SATISFIES *INTEL*'S DISCRETIONARY FACTORS**

In *Intel*, the Court identified four factors that bear consideration in ruling on a Section 1782 request. While the factors are not exhaustive, the Court stated that a court ruling on a Section 1782 request should consider: 1) whether the person from whom discovery is sought is a participant in the foreign proceeding; 2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; 3) whether the Section 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; 4) whether the discovery requests are unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65; *In re Clerici*, 481 F.3d at 1334.

A District Court may grant an application without consulting the discretionary factors, but the discretionary factors should be considered if the statutory requirements are met. *See In re Xavier*, No. 05-12218, 2006 WL 858489, at *1 (11th Cir. Apr. 4, 2006) (*per curiam*) (holding that district court had the authority to grant the § 1782 application for assistance in obtaining discovery from a bank in Miami as the statutory requirements were satisfied); *Chubbs Ins. Co. of Europe SE v. Zurich American Ins. Co.*, No. 1:09-mc-011, 2010 WL 411323 *6 (N.D. Ohio, Jan. 28, 2010).

Granting Ms. Akhmedova's request for relief is consistent with the guidance provided by the *Intel* court since neither of the discovery subjects will be parties to or participants in the Non-U.S. Actions. *Compare In re Application Pursuant to 28 U.S.C. § 1782*, No. 1:14-mc-44, 2014 WL 4181618 at *4 (S.D. Ohio, Aug. 21, 2014) (holding that discretionary requirements not met because subjects would be participants in the foreign proceedings). As such, Ms. Akhmedova would be unable to obtain discovery from Al Masaood in Dubai.

The nature of the foreign proceedings does not implicate any factor or policy that would weigh against granting Ms. Akhmedova's request. Instead, the nature of the actions – confirmation and enforcement of foreign country money judgments – weighs in favor of her request. The United States jurisdictions including Florida have confirmed their interest in facilitating enforcement and recognition of foreign money judgments by its own codification of the Uniform Money Judgment Recognition Act (*see* F.S. §§55.501-55.509). This is compounded by Farkhad's suspected wrongful use of companies and residents within this District to assist with evading enforcement of the English Judgments against him.

Nor would granting the assistance requested by Ms. Akhmedova offend any foreign jurisdiction or constitute a circumvention of foreign proof-gathering rules. *See* Tricoli Decl. ¶ 48. Additionally, the discovery subject Al Masaood is not a party to the Dubai Actions. *In re Application Pursuant to 28 U.S.C. § 1782*, 2014 WL 4181618 at *4 (holding that application's circumvention of foreign proof-gathering restrictions was not clear because subjects were subject to the jurisdiction of the foreign court).

Finally, the requests are neither unduly intrusive nor burdensome. As discussed above, key information relevant to the Dubai actions is located in this District. This includes documentation in the possession or control of Al Masaood. This information has not been made available to Applicant and is not available within Dubai, where the subject entity has been dissolved and struck from the corporate register. Moreover, the documentation requested is needed to confirm whether acts believed to have been taken by Farkhad to fraudulently obtain UAE resident status.

## IV. THIS COURT MAY GRANT DISCOVERY RELIEF ON AN *EX PARTE* BASIS

It is well-settled law that § 1782 applications may, and in fact commonly are, granted *ex parte*. *See, e.g., Gushlack v. Gushlack*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."); *In re Letters Rogatory From Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("We do not find any of the other objections raised by the witnesses to be persuasive. Letters Rogatory [issued under § 1782] are customarily received and appropriate action taken with respect thereto ex parte."); *In re Ex Parte Application of Societe D'Etude De Realisation*, No. 13-mc-0266, 2013 WL 6164435, at *2 (E.D. Pa. Nov. 22, 2013) ("[A] survey of Intel's citing references reveals that the use of ex parte applications is widespread and, in many cases, unremarked upon (and thus approved of sub silento).") (collecting cases).

## CONCLUSION

Based on the foregoing, this Court should exercise its discretion to grant foreign discovery assistance. Under the circumstances, evidence that will be relevant to Ms. Akhmedova's entitlement to relief in the foreign proceedings is not available in Dubai but is located in the United States in this District. As such, Ms. Akhmedova seeks discovery pursuant to 28 U.S.C. § 1782 to obtain discovery specified in the Application and as set forth above. Obtaining this information will require: (i) a subpoena requiring production of documents in the possession or control of Al Masaood concerning efforts made by himself personally or using Humasen Energy to obtain a United Arab Emirates (UAE) residency visa for Farkhad Akhmedov from 2014 to present; (ii) a subpoena requiring production concerning funds received by Al Masaood from Y.Co NY Inc., the yacht manager for Farkhad Akhmedov's yacht the M/Y LUNA, including but not limited to those received in 2018; and (iii) a subpoena requiring the appearance of Al Masaood for a deposition at

a mutually agreed time.  Consistent with precedent cited above, the facts in the present matter clearly meet the requirements of 28 U.S.C. § 1782, and this 1782 application for discovery should be granted.

Dated:  August 11, 2020

                    HOLLAND & KNIGHT LLP

By:    */s/ Jason Baruch*
        Jason Baruch (FBN 10280)
        100 North Tampa Street, Suite 4100
        Tampa, Florida 33602
        Telephone:  (813) 227-6607
        Facsimile:  (813) 229-0134
        Email:  jason.baruch@hklaw.com

        James H. Power
        Marie E. Larsen
        (*Pro Hac Vice* to be submitted)
        31 West 52nd Street
        New York, New York 10019
        Telephone:  (212) 513-3200
        Facsimile:  (212) 385-9010
        Email:  james.power@hklaw.com
                marie.larsen@hklaw.com

*Trial Counsel for Tatiana Akhmedova*

#77616534_v2